SNYDER *v.* HARRIS ET AL.

No. 109. Argued January 21, 1969.—Decided March 25, 1969.*

*Charles Alan Seigel* argued the cause for petitioner in No. 109. With him on the brief was *Hyman G. Stein.* *Gerrit H. Wormhoudt* argued the cause for petitioner in No. 117. With him on the brief were *Kirke W. Dale* and *Dale M. Stucky.*

*James L. Zemelman* argued the cause for respondents in No. 109. With him on the brief was *Morris A. Shenker.* *Robert Martin* argued the cause for respondent in No. 117. With him on the brief were *D. Arthur Walker* and *Richard Cook.*

MR. JUSTICE BLACK delivered the opinion of the Court.

Title 28 U. S. C. § 1332 grants jurisdiction to United States district courts of suits between citizens of different States where "the matter in controversy exceeds the sum

---

*Together with No. 117, *Gas Service Co.* v. *Coburn,* on certiorari to the United States Court of Appeals for the Tenth Circuit, argued on January 21–22, 1969.

or value of $10,000 . . . ." The issue presented by these two cases is whether separate and distinct claims presented by and for various claimants in a class action may be added together to provide the $10,000 jurisdictional amount in controversy.

Each of these cases involves a single plaintiff suing on behalf of himself and "all others similarly situated." In No. 109, Mrs. Margaret E. Snyder, a shareholder of Missouri Fidelity Union Trust Life Insurance Company, brought suit against members of the company's board of directors alleging that they had sold their shares of the company's stock for an amount far in excess of its fair market value, that this excess represented payment to these particular directors to obtain complete control of the company, and that under Missouri law the excess should properly be distributed among all the shareholders of the company and not merely to a few of them. The suit was brought in the United States District Court for the Eastern District of Missouri, diversity of citizenship being alleged as the basis for federal jurisdiction. Since petitioner's allegations showed that she sought for herself only $8,740 in damages, respondent moved to dismiss on the grounds that the matter in controversy did not exceed $10,000. Petitioner contended, however, that her claim should be aggregated with those of the other members of her class, approximately 4,000 shareholders of the company stock. If all 4,000 potential claims were aggregated, the amount in controversy would be approximately $1,200,000. The District Court held that the claims could not thus be aggregated to meet the statutory test of jurisdiction and the Court of Appeals for the Eighth Circuit, following a somewhat similar decision by the Court of Appeals for the Fifth Circuit in *Alvarez* v. *Pan American Life Insurance Co.,* 375 F. 2d 992, cert. denied, 389 U. S. 827 (1967), affirmed. 390 F. 2d 204 (1968).

In No. 117, Otto R. Coburn, a resident of Kansas, brought suit in the United States District Court for the District of Kansas against the Gas Service Company, a corporation marketing natural gas in Kansas. Jurisdiction was predicated upon diversity of citizenship. The complaint alleged that the Gas Service Company had billed and illegally collected a city franchise tax from Coburn and others living outside city limits. Coburn alleged damages to himself of only $7.81. Styling his complaint as a class action, however, Coburn sought relief on behalf of approximately 18,000 other Gas Service Company customers living outside of cities. The amount by which other members of the class had been overcharged was, and is, unknown, but the complaint alleged that the aggregation of all these claims would in any event exceed $10,000. The District Court overruled the Gas Company's motion to dismiss for failure to satisfy the jurisdictional amount and, on interlocutory appeal, the Court of Appeals for the Tenth Circuit affirmed, holding that because of a 1966 amendment to Rule 23 of the Federal Rules of Civil Procedure relating to class actions, separate and distinct claims brought together in a class action could now be aggregated for the purpose of establishing the jurisdictional amount in diversity cases. 389 F. 2d 831. We granted certiorari to resolve the conflict between the position of the Courts of Appeals for the Fifth and the Eighth Circuits and that of the Court of Appeals for the Tenth Circuit.

The first congressional grant to district courts to take suits between citizens of different States fixed the requirement for the jurisdictional amount in controversy at $500.[1] In 1887 this jurisdictional amount was increased to $2,000;[2] in 1911 to $3,000;[3] and in 1958 to $10,000.[4]

---

[1] Section 11 of the Judiciary Act of 1789, 1 Stat. 78.
[2] Act of March 3, 1887, 24 Stat. 552.
[3] Act of March 3, 1911, § 24, 36 Stat. 1091.
[4] Act of July 25, 1958, 72 Stat. 415.

The traditional judicial interpretation under all of these statutes has been from the beginning that the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement. Aggregation has been permitted only (1) in cases in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant and (2) in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest. It is contended, however, that the adoption of a 1966 amendment to Rule 23 effectuated a change in this jurisdictional doctrine. Under old Rule 23, class actions were divided into three categories which came to be known as "true," "hybrid," and "spurious." True class actions were those in which the rights of the different class members were common and undivided; in such cases aggregation was permitted. Spurious class actions, on the other hand, were in essence merely a form of permissive joinder in which parties with separate and distinct claims were allowed to litigate those claims in a single suit simply because the different claims involved common questions of law or fact. In such cases aggregation was not permitted: each plaintiff had to show that his individual claim exceeded the jurisdictional amount. The 1966 amendment to Rule 23 replaced the old categories with a functional approach to class actions. The new Rule establishes guidelines for the appropriateness of class actions, makes provision for giving notice to absent members, allows members of the class to remove themelves from the litigation and provides that the judgment will include all members of the class who have not requested exclusion. In No. 117, Gas Service Company, the Court of Appeals for the Tenth Circuit held that these changes in Rule 23 changed the jurisdictional amount doctrine as well. The court noted that: "Because the claims of the individuals constituting the class in the case at bar are neither 'joint'

nor 'common' this action under Rule 23 before amendment would not have been classified as a 'true' class action and aggregation of claims would not have been permitted." 389 F. 2d 831, 833. The Court of Appeals held, however, that a different result was compelled now that the amendment to Rule 23 abolished the distinctions between true and spurious class actions. The court held that because aggregation was permitted in some class actions, it must now be permitted in all class actions under the new Rule. We disagree and conclude, as did the Courts of Appeal for the Fifth and Eighth Circuits, that the adoption of amended Rule 23 did not and could not have brought about this change in the scope of the congressionally enacted grant of jurisdiction to the district courts.

The doctrine that separate and distinct claims could not be aggregated was never, and is not now, based upon the categories of old Rule 23 or of any rule of procedure. That doctrine is based rather upon this Court's interpretation of the statutory phrase "matter in controversy." The interpretation of this phrase as precluding aggregation substantially predates the 1938 Federal Rules of Civil Procedure. In 1911 this Court said in *Troy Bank* v. *Whitehead & Co.*:

> "When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount . . . ." 222 U. S. 39, 40.

By 1916 this Court was able to say in *Pinel* v. *Pinel*, 240 U. S. 594, that it was "settled doctrine" that separate and distinct claims could not be aggregated to meet the required jurisdictional amount. In *Clark* v. *Paul Gray, Inc.*, 306 U. S. 583 (1939), this doctrine, which had first been declared in cases involving joinder of

parties, was applied to class actions under the then recently passed Federal Rules. In that case numerous individuals, partnerships, and corporations joined in bringing a suit challenging the validity of a California statute which exacted fees of $15 on each automobile driven into the State. Raising the jurisdictional amount question *sua sponte,* this Court held that the claims of the various fee payers could not be aggregated "where there are numerous plaintiffs having no joint or common interest or title in the subject matter of the suit." 306 U. S., at 588. Nothing in the amended Rule 23 changes this doctrine. The class action plaintiffs in the two cases before us argue that since the new Rule will include in the judgment all members of the class who do not ask to be out by a certain date, the "matter in controversy" now encompasses all the claims of the entire class. But it is equally true that where two or more plaintiffs join their claims under the joinder provisions of Rule 20, each and every joined plaintiff is bound by the judgment. And it was in joinder cases of this very kind that the doctrine that distinct claims could not be aggregated was originally enunciated. *Troy Bank* v. *Whitehead & Co.,* 222 U. S. 39 (1911); *Pinel* v. *Pinel,* 240 U. S. 594 (1916). The fact that judgments under class actions formerly classified as spurious may now have the same effect as claims brought under the joinder provisions is certainly no reason to treat them *differently* from joined actions for purposes of aggregation.

Any change in the Rules that did purport to effect a change in the definition of "matter in controversy" would clearly conflict with the command of Rule 82 that "[t]hese rules shall not be construed to extend or limit the jurisdiction of the United States district courts . . . ." In *Sibbach* v. *Wilson & Co.,* this Court held that the rule-making authority was limited by "the inability of a court, by rule, to extend or restrict the jurisdiction

conferred by a statute." 312 U. S. 1, 10 (1941). We have consistently interpreted the jurisdictional statute passed by Congress as not conferring jurisdiction where the required amount in controversy can be reached only by aggregating separate and distinct claims. The interpretation of that statute cannot be changed by a change in the Rules.

For the reasons set out above, we think that it is unmistakably clear that the 1966 changes in Rule 23 did not and could not have changed the interpretation of the statutory phrase "matter in controversy." It is urged, however, that this Court should now overrule its established statutory interpretation and hold that "matter in controversy" encompasses the aggregation of all claims that can be brought together in a single suit, regardless of whether any single plaintiff has a claim that exceeds the required jurisdictional amount. It is argued in behalf of this position that (1) the determination of whether claims are "separate and distinct" is a troublesome question that breeds uncertainty and needless litigation, and (2) the inability of parties to aggregate numerous small claims will prevent some important questions from being litigated in federal courts. And both of these factors, it is argued, will tend to undercut the attempt of the Judicial Conference to promulgate efficient and modernized class action procedures. We think that whatever the merit of these contentions, they are not sufficient to justify our abandonment of a judicial interpretation of congressional language that has stood for more than a century and a half.

It is linguistically possible, of course, to interpret the old congressional phrase "matter in controversy" as including all claims that can be joined or brought in a single suit through the class action device. But, beginning with the first Judiciary Act in 1789 Congress has

placed a jurisdictional amount requirement on access to the federal courts in certain classes of cases, including diversity actions. The initial requirement was $500 and a series of increases have, as pointed out above, finally placed the amount at $10,000. Congress has thus consistently amended the amount-in-controversy section and re-enacted the "matter-in-controversy" language without change of its jurisdictional effect against a background of judicial interpretation that has consistently interpreted that congressionally enacted phrase as not encompassing the aggregation of separate and distinct claims. This judicial interpretation has been uniform since at least the 1832 decision of this Court in *Oliver* v. *Alexander,* 6 Pet. 143. There are no doubt hazards and pitfalls involved in assuming that re-enactment of certain language by Congress always freezes the existing judicial interpretation of the statutes involved. Here, however, the settled judicial interpretation of "amount in controversy" was implicitly taken into account by the relevant congressional committees in determining, in 1958, the extent to which the jurisdictional amount should be raised. It is quite possible, if not probable, that Congress chose the increase to $10,000 rather than the proposed increases to $7,500 or $15,000 on the basis of workload estimates which clearly relied on the settled doctrine that separate and distinct claims could not be aggregated. Where Congress has consistently re-enacted its prior statutory language for more than a century and a half in the face of a settled interpretation of that language, it is perhaps not entirely realistic to designate the resulting rule a "judge-made formula."

To overrule the aggregation doctrine at this late date would run counter to the congressional purpose in steadily increasing through the years the jurisdictional amount requirement. That purpose was to check, to

some degree, the rising caseload of the federal courts, especially with regard to the federal courts' diversity of citizenship jurisdiction. Any change in the doctrine of aggregation in class action cases under Rule 23 would inescapably have to be applied as well to the liberal joinder provisions of Rule 20 and to the joinder of claims provisions of Rule 18. The result would be to allow aggregation of practically any claims of any parties that for any reason happen to be brought together in a single action. This would seriously undercut the purpose of the jurisdictional amount requirement. The expansion of the federal caseload could be most noticeable in class actions brought on the basis of diversity of citizenship. Under current doctrine, if one member of a class is of diverse citizenship from the class' opponent, and no nondiverse members are named parties, the suit may be brought in federal court even though all other members of the class are citizens of the same State as the defendant and have nothing to fear from trying the lawsuit in the courts of their own State. See *Supreme Tribe of Ben-Hur* v. *Cauble,* 255 U. S. 356 (1921). To allow aggregation of claims where only one member of the entire class is of diverse citizenship could transfer into the federal courts numerous local controversies involving exclusively questions of state law. In *Healy* v. *Ratta,* 292 U. S. 263 (1934), this Court noted that by successively raising the jurisdictional amount, Congress had determined that cases involving lesser amounts should be left to be dealt with by the state courts and said:

> "The policy of the statute calls for its strict construction. . . . Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." 292 U. S. 263, 270.

Finally, it has been argued that unless the established aggregation principles are overturned, the functional advantages alleged to inhere in the new class action Rule will be undercut by resort to the old forms. But the disadvantageous results are overemphasized, we think, since lower courts have developed largely workable standards for determining when claims are joint and common, and therefore entitled to be aggregated, and when they are separate and distinct and therefore not aggregable. Moreover, while the class action device serves a useful function across the entire range of legal questions, the jurisdictional amount requirement applies almost exclusively to controversies based upon diversity of citizenship. A large part of those matters involving federal questions can be brought, by way of class actions or otherwise, without regard to the amount in controversy. Suits involving issues of state law and brought on the basis of diversity of citizenship can often be most appropriately tried in state courts. The underlying claims in the two cases before us, for example, will be determined exclusively on the basis of Missouri and Kansas law, respectively. In No. 109, a separate suit litigating the underlying issues has already been filed in a Missouri state court. In No. 117, the residents of Kansas who contend that certain gas service charges are not authorized by Kansas law can bring a class action under Kansas procedures that are patterned on former Federal Rule 23. There is no compelling reason for this Court to overturn a settled interpretation of an important congressional statute in order to add to the burdens of an already overloaded federal court system. Nor can we overlook the fact that the Congress that permitted the Federal Rules to go into effect was assured before doing so that none of the Rules would either expand or contract the jurisdiction of federal courts. If there is a present need

to expand the jurisdiction of those courts we cannot overlook the fact that the Constitution specifically vests that power in the Congress, not in the courts.

The judgment in No. 109 is

*Affirmed.*

The judgment in No. 117 is

*Reversed.*

MR. JUSTICE FORTAS, with whom MR. JUSTICE DOUGLAS joins, dissenting.

The Court today refuses to conform the judge-made formula for computing the amount in controversy in class actions with the 1966 amendment to Rule 23 of the Federal Rules of Civil Procedure. The effect of this refusal is substantially to undermine a generally welcomed and long-needed reform in federal procedure.[1]

Its impact will be noticeable not only in diversity of citizenship cases but also in important classes of federal question cases in which federal jurisdiction must be based on 28 U. S. C. § 1331, the general federal question provision, rather than on one of the specific grants of federal jurisdiction.[2]

---

[1] On the background of the amendment to Rule 23 and its reception, see, *e. g.*, Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv. L. Rev. 356, 380–386 (1967); Cohn, The New Federal Rules of Civil Procedure, 54 Geo. L. J. 1204, 1213–1214 (1966); Note, Proposed Rule 23: Class Actions Reclassified, 51 Va. L. Rev. 629, 630–636 (1965). See also 2 W. Barron & A. Holtzoff, Federal Practice and Procedure § 561 and n. 15.1 (C. Wright ed. 1968 Pocket Part) (hereinafter cited as Barron & Holtzoff). Even commentators critical of the apparent breadth of the new Rule welcomed abolition of the categories of the old Rule. *E. g.*, Ford, The History and Development of Old Rule 23 and the Development of Amended Rule 23, 32 ABA Antitrust L. J. 254, 257–258 (1966).

[2] The majority says broadly, "A large part of those matters involving federal questions can be brought, by way of class actions

The artificial, awkward, and unworkable distinctions between "joint," "common," and "several" claims and between "true," "hybrid," and "spurious" class actions which the amendment of Rule 23 sought to terminate is now re-established in federal procedural law. Litigants, lawyers, and federal courts must now continue to be ensnared in their complexities in all cases where one or more of the coplaintiffs have a claim of less than the jurisdictional amount, usually $10,000.

It was precisely this morass that the 1966 amendment to Rule 23 sought to avoid. The amendment had as its purpose to give the Federal District Courts wider discretion as to the type of claims that could be joined in litigation. That amendment replaced the metaphysics of conceptual analysis of the "character of the right sought to be enforced" by a pragmatic, workable definition of when class actions might be maintained,

---

or otherwise, without regard to the amount in controversy." *Ante,* at 341. However, in at least one vitally important type of federal question case—an action alleging that governmental action, state or federal, violates constitutional limits—the task of demonstrating the existence of federal jurisdiction would in many instances be significantly complicated if 28 U. S. C. § 1331 were not available. There are, to be sure, a large number of specific statutory provisions conferring on the federal courts jurisdiction to hear certain types of federal question cases. No doubt many constitutional cases could ultimately be brought within one of these special provisions. However, the pitfalls of seeking to establish federal jurisdiction in a constitutional action against public officials without resort to 28 U. S. C. § 1331 are suggested by the diversity of opinions in *Hague* v. *CIO,* 307 U. S. 496 (1939). Even if 28 U. S. C. § 1343 provides a basis for jurisdiction of such an action against state officials, see *Pierson* v. *Ray,* 386 U. S. 547 (1967); *Monroe* v. *Pape,* 365 U. S. 167 (1961), that statute is no help to one challenging purely federal action. *Wheeldin* v. *Wheeler,* 373 U. S. 647, 650 and n. 2 (1963). See generally Friedenthal, New Limitations on Federal Jurisdiction, 11 Stan. L. Rev. 213, 216–218 (1959).

**344**

that is, when claims of various claimants might be aggregated in a class action, and it carefully provided procedures and safeguards to avoid unfairness.[3]

<hr>

[3] The Rule, as amended, reads:

"Rule 23. Class Actions

"(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

"(1) the prosecution of separate actions by or against individual members of the class would create a risk of

"(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

"(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

"(c) Determination by Order Whether Class Action to be Main-

The amendment was formulated with care by an able committee and recommended to this Court by the Judicial Conference of the United States pursuant to 28

tained; Notice; Judgment; Actions Conducted Partially as Class Actions.

"(1) As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.

"(2) In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

"(3) The judgment in an action maintained as a class action under subdivision (b)(1) or (b)(2), whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under subdivision (b)(3), whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in subdivision (c)(2) was directed, and who have not requested exclusion, and whom the court finds to be members of the class.

"(4) When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly.

"(d) Orders in Conduct of Actions. In the conduct of actions to which this rule applies, the court may make appropriate orders: (1) determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument; (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify

U. S. C. § 331.[4] It was accepted and promulgated by this Court,[5] and, with congressional acquiescence, became the law of the land on July 1, 1966. 28 U. S. C. § 2072 (1964 ed., Supp. III). Now the Court, for reasons which in my opinion will not stand analysis, defeats the purpose of the amendment as applied to cases like those before us here and insists upon a perpetuation of distinctions which the profession had hoped would become only curiosities of the past.

The Court is led to this unfortunate result by its insistence upon regarding the method of computing the amount in controversy as embodied in an Act of Congress, as unaffected by the subsequent amendment of Rule 23, and as immune from judicial re-examination because any change would be an impermissible expansion of the jurisdiction of the courts. None of these premises is correct.

## I.

Since the first Judiciary Act, Congress has included in certain grants of jurisdiction to the federal courts— notably the grants of jurisdiction based on diversity of

---

whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action; (3) imposing conditions on the representative parties or on intervenors; (4) requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly; (5) dealing with similar procedural matters. The orders may be combined with an order under Rule 16, and may be altered or amended as may be desirable from time to time.

"(e) Dismissal or Compromise. A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs. (As amended Feb. 28, 1966, eff. July 1, 1966.)"

[4] 1965 U. S. Judicial Conf. Proceedings Rep. 52–53. See Kaplan, *supra*, n. 1, at 357–358.

[5] 383 U. S. 1031 (1966).

citizenship [6] and the later-established grant of a general jurisdiction to consider cases raising federal questions [7]— a requirement that the "matter in controversy" exceed a stated amount of money. Congress has never expanded or explained the bare words of these successive jurisdictional amount statutes. Over the years the courts themselves have developed a detailed and complex set of rules for determining when the jurisdictional amount requirements are met.[8]

Among these rules is the proposition that multiple parties cannot aggregate their "separate and distinct" claims to reach the jurisdictional amount. *E. g., Troy Bank* v. *Whitehead & Co.*, 222 U. S. 39, 40 (1911); *Oliver* v. *Alexander*, 6 Pet. 143, 147 (1832). Applying that general principle to traditional property law concepts, the courts developed the more specialized rule that multiple parties who asserted very similar legal claims could not aggregate them to make up the jurisdictional amount if their interests, however similar in fact, were in legal theory "several," *e. g., Pinel* v. *Pinel*, 240 U. S. 594 (1916), but that such aggregation was permissible where the parties claimed undivided interests in a single "joint" right. *E. g., Texas & Pacific R. Co.* v. *Gentry*, 163 U. S. 353 (1896); *Shields* v. *Thomas*, 17 How. 3 (1855).

This general aggregation rule, and its much later application to class actions,[9] rest entirely on judicial decisions,

---

[6] 28 U. S. C. § 1332.

[7] 28 U. S. C. § 1331. Other jurisdictional statutes providing a monetary requirement include 28 U. S. C. § 1335 (interpleader); § 1346 (claims against United States); § 1445 (removal of certain actions against carriers).

[8] See generally 1 J. Moore, Federal Practice ¶¶ 0.90–0.99; 1 Barron & Holtzoff § 24; Ilsen & Sardell, The Monetary Minimum in Federal Court Jurisdiction: I, 29 St. John's L. Rev. 1 (1954), *id.*, II, p. 183 (1955); Note, Federal Jurisdictional Amount: Determination of the Matter in Controversy, 73 Harv. L. Rev. 1369 (1960).

[9] *Clark* v. *Paul Gray, Inc.*, 306 U. S. 583 (1939); *Buck* v. *Gallagher*, 307 U. S. 95 (1939). See *Thomson* v. *Gaskill*, 315 U. S. 442 (1942).

not on any Act of Congress. There is certainly no reason the specific application of this body of federal decisional law to class actions should be immune from re-evaluation after a fundamental change in the structure of federal class actions has made its continuing application wholly anomalous.[10]

The majority rather half-heartedly suggests that this judicial interpretation of the jurisdictional amount statute is not subject to judicial re-evaluation because Congress by re-enacting the jurisdictional amount statute from time to time has somehow expressed an intent to freeze once and for all the judicial interpretation of the statute. As the majority frankly acknowledges, there are "hazards and pitfalls involved in assuming that re-enactment of certain language by Congress always freezes the existing judicial interpretation of the statutes involved."

While re-enactment may sometimes signify adoption, in my view the appropriate position on the matter is that stated in *Girouard* v. *United States,* 328 U. S. 61, 69–70 (1946):

> " 'It would require very persuasive circumstances enveloping Congressional silence to debar this Court from reexamining its own doctrines.' It is at best treacherous to find in congressional silence alone the adoption of a controlling rule of law. . . . The silence of Congress and its inaction are as consistent with a desire to leave the problem fluid as they are with an adoption by silence of the rule of those cases." [11]

---

[10] For a criticism of the aggregation doctrine in another context, see Note, The Federal Jurisdictional Amount Requirement and Joinder of Parties Under the Federal Rules of Civil Procedure, 27 Ind. L. J. 199 (1952).

[11] See also *Helvering* v. *Reynolds,* 313 U. S. 428, 432 (1941); Note, Legislative Adoption of Prior Judicial Construction: The

This case, far from being one in which there are "very persuasive circumstances" indicating congressional adoption of prior judicial doctrines, is one where only by the most obvious fiction can congressional re-enactment of a general statute be said to manifest an intention to adopt and perpetuate an existing technical judicial doctrine designed to facilitate administration of the statute.

The hearings and reports on the 1958 statute raising the jurisdictional amount from $3,000 to $10,000—which the majority fastens on as the adopting re-enactment—include not one word about the whole complex body of rules by which courts determine when the amount is at issue, much less any reference to the particular problem of aggregation of claims in class action cases.[12] The

---

*Girouard* Case and the Reenactment Rule, 59 Harv. L. Rev. 1277 (1946). In *Francis* v. *Southern Pacific Co.*, 333 U. S. 445, 450 (1948), the majority noted the difficulty of regarding re-enactment as a congressional adoption of existing judicial doctrines, but decided that "in the setting of this case" adoption was implied. The dissent responded:

"[I]f judges make rules of law, it would seem that they should keep their minds open in order to exercise a continuing and helpful supervision over the manner in which their laws serve the public." 333 U. S., at 453.

"I venture the suggestion that it would be shocking to members of Congress, even those who are in closest touch with [the kind of legislation involved], to be told that their 'silence' is responsible for application today of a rule which is out of step with the trend of all congressional legislation for more than the past quarter of a century. There are some fields in which congressional committees have such close liaison with agencies in regard to some matters, that it is reasonable to assume an awareness of Congress with relevant judicial and administrative decisions. But I can find no ground for an assumption that Congress has known about the . . . rule [held adopted by re-enactment] and deliberately left it alone because it favored such an archaic doctrine." *Id.*, 465–466.

[12] See Hearing on H. R. 2516 and H. R. 4497, before Subcommittee No. 3 of the House Committee on the Judiciary, 85th Cong., 1st

majority speculates that it is "possible, if not probable," that Congress "implicitly" took into account the existing aggregation doctrines as applied to class action cases when it decided to raise the jurisdictional amount to $10,000 rather than some higher or lower amount. If we are to attribute to Congress any thoughts on this highly technical and specialized matter, it seems to me far more reasonable to assume that Congress was aware that the courts had been developing the interpretation of the jurisdictional amount requirement in class actions and would continue to do so after the 1958 amendments.

I cannot find any meaningful sense in which the aggregation doctrines in class action cases should be any less subject to re-evaluation in the light of new conditions because Congress in 1958 re-enacted the jurisdictional amount statute to raise the dollar amount required.

## II.

Whatever the pre-1966 status of the aggregation doctrines in class action cases, the amendment of the Rules in that year permits and even requires a re-examination of the application of the doctrines to such cases. The fundamental change in the law of class actions effected by the new Rule 23 requires that prior subsidiary judicial doctrines developed for application to the old Rule be harmonized with the new procedural law. By Act of Congress, the Rules of Procedure, when promulgated according to the statutorily defined process, have the effect of law and supersede all prior laws in conflict with them. 28 U. S. C. § 2072 (1964 ed., Supp. III). Thus, even if the old aggregation doctrines were embodied in statute—as they are not—they could not stand if they conflicted with the new Rule.

---

Sess., ser. 5 (1957); H. R. Rep. No. 1706, 85th Cong., 2d Sess. (1958); S. Rep. No. 1830, 85th Cong., 2d Sess. (1958).

Under the pre-1966 version of Rule 23 the very availability of the class action device depended on the "joint" or "common" "character of the right sought to be enforced."[13] If the right were merely "several," only a "spurious" class action could be maintained and only those members of the class who actually appeared as parties were bound by the judgment.[14] It was in this context of a law of class actions already heavily dependent on categorization of interests as "joint" or "several" that the traditional aggregation doctrines were originally applied to class actions under the Federal Rules. In such a context those aggregation doctrines which the majority now perpetuates in the quite different context of the new Rule, whatever their other defects, were at least not anomalous and eccentric.

Scholarly and professional criticism of the "character of interest" classification scheme was vigorous and distinguished.[15] Courts as well found the old Rule 23

---

[13] A "true" class action could also be maintained to enforce a right "secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it." Stockholders' derivative actions were the most significant type of suit within this group. They are now separately dealt with under Rule 23.1 in addition. Under the former Rule 23 (a)(2), if the right was "several" in character, "and the object of the action is the adjudication of claims which do or may affect specific property involved in the action," a "hybrid" class action could be maintained which would determine the interests of each member of the class in the particular property.

[14] See, e. g., All Amer. Airways, Inc. v. Elderd, 209 F. 2d 247 (C. A. 2d Cir. 1954). Thus, under the prior Rule, the "spurious" class action was in effect little more than a permissive joinder device. The pre-amendment categorization and its consequences are explicated in detail in 3A J. Moore, Federal Practice ¶¶ 23.08–23.14.

[15] E. g., Z. Chafee, Some Problems of Equity 243–295 (1950); C. Wright, Handbook of the Law of Federal Courts 269 (1963); Kalven & Rosenfield, The Contemporary Function of the Class Suit, 8 U. Chi. L. Rev. 684 (1941). See Note, Proposed Rule 23: Class Actions Reclassified, 51 Va. L. Rev. 629, n. 3 (1965).

categories confusing and unhelpful in making practical decisions. Not only was the categorization difficult,[16] but dividing group interests according to whether they were "joint" or "several" did not isolate those cases in which a class action was appropriate from those in which it was not.[17] In proposing amendment of Rule 23, the Advisory Committee summed up experience under the old Rule by saying:

> "In practice the terms 'joint,' 'common,' etc., which were used as the basis of the Rule 23 classification proved obscure and uncertain." 39 F. R. D. 98.

In response to the demonstrated inappropriateness of the "character of interest" categorization, the Rule dealing with class actions was fundamentally amended, effective in July 1966. Under the new Rule the focus shifts from the abstract character of the right asserted to explicit analysis of the suitability of the particular claim to resolution in a class action. The decision that a class action is appropriate is not to be taken lightly; the district court must consider the full range of relevant factors specified in the Rule. However, whether a claim is, in traditional terms, "joint" or "several" no longer has any necessary relevance to whether a class action is proper. Thus, the amended Rule 23, which in the area of its operation has the effect of a statute, states a new method for determining when the common interests of

---

[16] A notable example is *Deckert* v. *Independence Shares Corp.*, 27 F. Supp. 763 (D. C. E. D. Pa.), rev'd, 108 F. 2d 51 (C. A. 3d Cir. 1939), rev'd, 311 U. S. 282 (1940), on remand, 39 F. Supp. 592 (D. C. E. D. Pa.), rev'd *sub nom. Pennsylvania Co. for Insurances on Lives* v. *Deckert*, 123 F. 2d 979 (C. A. 3d Cir. 1941). The views of successive courts on the proper classification of the *Deckert* action are discussed in Chafee, *supra*, n. 15, at 263–269.

[17] See Fed. Rule Civ. Proc. 23, Advisory Comm. Note, 39 F. R. D. 98–99.

many individuals can be asserted and resolved in a single litigation.

The jurisdictional amount statutes require placing a value on the "matter in controversy" in a civil action. Once it is decided under the new Rule that an action may be maintained as a class action, it is the claim of the whole class and not the individual economic stakes of the separate members of the class which is the "matter in controversy." That this is so is perhaps most clearly indicated by the fact that the judgment in a class action, properly maintained as such, includes all members of the class. Rule 23 (c)(3). This effect of the new Rule in broadening the scope of the "controversy" in a class action to include the combined interests of all the members of the class is illustrated by the facts of No. 117. That class action, if allowed to proceed, would, under the Rule, determine not merely whether the gas company wrongfully collected $7.81 for taxes from Mr. Coburn. It would also result in a judgment which, subject to the limits of due process,[18] would determine—authoritatively and not merely as a matter of precedent—the status of the taxes collected from the 18,000 other people allegedly in the class Coburn seeks to represent.[19] That being the case, it is hard to understand why the fact that the alleged claims are, in terms of the old Rule categories, "several" rather than "joint," means that the "matter in controversy" for jurisdictional amount purposes must be regarded as the $7.81 Mr. Coburn claims instead of the thousands of dollars of alleged overcharges of the whole class, the status of all of which would be determined by the judgment.

[18] See *Hansberry* v. *Lee,* 311 U. S. 32, 42–43 (1940).

[19] If members of the class elected to exercise the right, which might be extended them under Rule 23 (b)(3), to exclude themselves from the litigation, they would not be included in the judgment in the class action.

In past development of rules concerning the jurisdictional amount requirement, the courts have, properly, responded to changes in the procedural and substantive law.[20] Now, confronted by an issue of the meaning of the jurisdictional amount requirement arising in the context of a new procedural law of class actions, we should continue to take account of such changes. We should not allow the judicial interpretation of the jurisdictional amount requirement to become petrified into forms which are products of, and appropriate to, another time. To do this would vitiate a significant part of the reform intended to be accomplished by the amendment of Rule 23. For the majority result will continue to make determinative of the maintainability of a class action just that obsolete conceptualism the amended Rule sought to make irrelevant. In this sense, continued adherence to the old aggregation doctrines conflicts with the new Rule and is improper under 28 U. S. C. § 2072 (1964 ed., Supp. III).

### III.

Permitting aggregation in class action cases does not involve any violation of the principle, expressed in Rule 82 and inherent in the whole procedure for the

---

[20] For example, the general rule is that if suit is brought only for past installments due under an installment contract, the jurisdictional amount is in controversy only if the installments due at the time of suit exceed the jurisdictional amount. *E. g., New York Life Ins. Co.* v. *Viglas,* 297 U. S. 672 (1936). However, if, because of the structure of equitable remedies or the availability of a declaratory judgment, the action can put in issue the validity of the contract as a whole, the "matter in controversy" is not the accrued damages, but the potential value of full performance. *Landers Frary & Clark* v. *Vischer Prods. Co.,* 201 F. 2d 319 (C. A. 7th Cir. 1953); *Franklin Life Ins. Co.* v. *Johnson,* 157 F. 2d 653 (C. A. 10th Cir. 1946); *Davis* v. *American Foundry Equip. Co.,* 94 F. 2d 441 (C. A. 7th Cir. 1938). See Note, Developments in the Law, Declaratory Judgments—1941–1949, 62 Harv. L. Rev. 787, 801–802 (1949).

promulgation and amendment of the Federal Rules, that the courts cannot by rule expand their own jurisdictions. While the Rules cannot change subject-matter jurisdiction, changes in the forms and practices of the federal courts through changes in the Rules frequently and necessarily will affect the occasions on which subject-matter jurisdiction is exercised, because they will in some cases make a difference in what cases the federal courts will hear and who will be authoritatively bound by the judgment.[21] For example, the development of the law of joinder and ancillary jurisdiction under the Federal Rules has influenced the "jurisdiction" of the federal courts in this broader sense.[22] Indeed, the promulgation of the old Rule 23 provided a new means for resolving in a single federal litigation, based on diversity jurisdiction, the claims of all members of a class, even though some in the class were not of diverse citizenship from parties on the other side.[23] Similarly, the creation in a Rule having statutory effect of a new type of class action—one meeting the requirements of the new Rule as to suitability for class-wide resolution,

[21] See *Mississippi Pub. Corp.* v. *Murphree,* 326 U. S. 438, 445–446 (1946); Kaplan, *supra,* n. 1, at 399–400. Cf. *Provident Tradesmens Bank & Trust Co.* v. *Patterson,* 390 U. S. 102, 116–125 (1968).

[22] See Wright, *supra,* n. 15, at 19–20; Fraser, Ancillary Jurisdiction and the Joinder of Claims in the Federal Courts, 33 F. R. D. 27, 28.

[23] It has long been established that if the requisite diversity existed between the original parties federal jurisdiction is not ousted merely because later intervenors or members of the class represented by the original parties are citizens of the same State as an adverse party. *Stewart* v. *Dunham,* 115 U. S. 61 (1885); *Supreme Tribe of Ben-Hur* v. *Cauble,* 255 U. S. 356 (1921). The original Rule 23 provided new occasions for the assertion of this principle, with respect to both "true" class actions, *Montgomery Ward & Co.* v. *Langer,* 168 F. 2d 182 (C. A. 8th Cir. 1948), and those merely "spurious," *Amen* v. *Black,* 234 F. 2d 12 (C. A. 10th Cir. 1956), dismissed as moot, 355 U. S. 600 (1958).

although involving "several" interests of the members of the class—has changed the procedural context in which the subject-matter-jurisdiction statutes, like those referring to jurisdictional amount, are to be applied. Making judicial rules for calculating jurisdictional amount responsive to the new structure of class actions is not an extension of the jurisdiction of the federal courts, but a recognition that the procedural framework in which the courts operate has been changed by a provision having the effect of law.

In a larger sense as well, abandonment of the old aggregation rules for class actions would fulfill rather than contradict the command that courts adhere to the jurisdictional boundaries established by Congress. In a large number of instances, Congress has said that cases raising claims with a certain subject matter may be heard in federal courts regardless of the amount involved. However, it has also provided generally that in the two great areas of Article III jurisdiction—federal questions and diversity of citizenship—any suit, regardless of specific subject matter, may be heard if "the matter in controversy exceeds the sum or value of $10,000." Just as it would be wrong for the courts to exercise a jurisdiction not properly theirs, so it would be wrong for the courts to refuse to exercise a part of the jurisdiction granted them because of a view that Congress erred in granting it.

The new Rule 23, by redefining the law of class actions, has, with the effect of statute, provided for a decision by the district courts that the nominally separate and legally "several" claims of individuals may be so much alike that they can be tried all at once, as if there were just one claim, in a single proceeding in which most members of the class asserting the claim will not be personally present at all. When that determination has been made, in accordance with the painstaking demands of Rule 23,

there is authorized to be brought in the federal courts a single litigation, in which, both practically and in legal theory, the thing at stake, the "matter in controversy," is the total, combined, aggregated claim of the whole class. When that happens the courts do not obey, but violate, the jurisdictional statutes if they continue to impose ancient and artificial judicial doctrines to fragment what is in every other respect a single claim, which the courts are commanded to stand ready to hear.

For these reasons, I would measure the value of the "matter in controversy" in a class action found otherwise proper under the amended Rule 23 by the monetary value of the claim of the whole class.