419 F.Supp. 625 (1976)
Elizabeth ALLEMAN, on her own behalf and on behalf of all others similarly situated, Plaintiff,
v.
T. R. W., INC., Defendant.
Civ. No. 73-721.
United States District Court, M. D. Pennsylvania.
September 9, 1976.
*626 Arnold Levin, Freedman, Borowsky & Lorry, Philadelphia, Pa., Walter W. Wilt, Hepford, Zimmerman & Swartz, Harrisburg, Pa., for plaintiff.
H. Lee Roussel, McNees, Wallace & Nurick, Harrisburg, Pa., for defendant.

MEMORANDUM AND ORDER
HERMAN, District Judge.
We have before us at this time defendant's motion for summary judgment, which will be granted.
This case involves an alleged discrimination on account of sex by the defendant, T.R.W., Inc., in the company's seniority system.
After considerable briefing and oral argument by the parties on defendant's motion to dismiss, this court, on December 17, 1974, in denying the motion found that "the plaintiff has nowhere to date alleged any affirmative conduct by the defendant which occurred in the 180 days preceding February 28, 1973 [the date she filed a complaint with the Equal Employment Opportunity Commission]."[1] While it is true that the complaint does charge in a conclusory way that the defendant's allegedly discriminatory conduct affected "hiring, seniority, layoff [and] recall" rights,[2] the last affirmative conduct directed toward the plaintiff was the March 1971 layoff which occurred two years prior to the filing of the complaint.
We then concluded that while plaintiff's allegations of "layoff" and "recall" were conclusory and not sufficient to relieve the plaintiff from eventually establishing that a discriminatory recall actually occurred within the 180 day period, such allegations appeared sufficient to justify a denial of a motion to dismiss. See, Cox v. United States Gypsum Co., 409 F.2d 289 (7th Cir. 1969).
We emphasized, however, that plaintiff would be required to show at least one discriminatory recall within 180 days prior to February 28, 1973, such an event being a jurisdictional prerequisite, and that if discovery revealed no such recall, a motion to dismiss (or a motion for summary judgment) might be appropriate.
As we pointed out in our unreported memorandum of December 17, 1974, Elizabeth Alleman, the plaintiff, alleged inter alia:
(a) She was hired by T.R.W. in March 1967 under a seniority system that wrongly discriminated in favor of male employees;
(b) She was "laid off" by T.R.W. in November 1968 based on the discriminatory seniority system under which she was *627 hired. As part of the allegations, the plaintiff expressly contends that men with less actual time as T.R.W. employees who did the same work as she were nevertheless retained during the layoff;
(c) She was recalled to work in May 1969, still under the discriminatory seniority system, but in an even worse relative position because of the seniority she lost during the layoff;
(d) On March 12, 1971 she was again laid off by T.R.W., based again on the discriminatory seniority system;
(e) She was never recalled to work;
(f) On February 28, 1973, she filed a complaint with the EEOC.
It is on the basis of these facts that plaintiff contends that defendant has violated Title VII of the Civil Rights Act of 1964, Equal Employment Opportunities, 42 U.S.C. §§ 2000e, et seq., and by way of the principle of pendent jurisdiction contends that defendant violated the Pennsylvania Human Relations Act, 43 P.S. §§ 951, et seq.[3]
In January of 1975 the Third Circuit Court of Appeals decided the case of Jersey Central Power & Light Co. v. Local Union 327, Etc. of I.B.E.W., 508 F.2d 687 which concerned among other things a plant-wide seniority system comparable to the system contained in the collective bargaining agreements in effect at T.R.W. during the periods in question in the instant case.[4] The Third Circuit held, inter alia, that "[A] seniority clause providing for layoffs by reverse order of seniority is not contrary to public policy and welfare and consequently is not subject to modification by court decree." (p. 705) The court further held that evidence that the plant-wide seniority system discriminated in the past and thus carried into the future the effects of such discrimination should not be permitted.
The Supreme Court granted certiorari and remanded the case to the circuit for further consideration in light of Franks v. Bowman Transportation Co., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), and so we must consider the holding in the Franks case.
Part I of the Opinion in Franks deals with the question of mootness. The question which concerns us in Alleman is discussed in Part II.
At the outset the Court states the problem in these words:
"As respects unnamed members of class 3nonemployee black applicants who applied for and were denied OTR [over-the-road] prior to January 1, 1972the Court of Appeals affirmed the District Court's denial of any form of seniority relief. Only this last aspect of the Court of Appeals' judgment is before us for review under our grant of the petition for certiorari. . . ." 424 U.S., at 752, 96 S.Ct., at 1258, 47 L.Ed.2d, at 454.
So it would seem that it is the form of relief only that is here being considered.
The Court of Appeals had held that § 703(h) of Title VII, 42 U.S.C. § 2000e-2(h) barred the seniority relief but the Supreme Court disagreed with this holding and reversed and remanded to the District Court for further proceedings.
Section 703(h) provides, in pertinent part:
"Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system . . provided that such differences are not the result of an intention to discriminate because of race, color, religion, sex or national origin . . .."
The Court points out that here (in Franks v. Bowman) the underlying wrong affecting plaintiff is not the alleged operation of a racially discriminatory seniority system, but of a racially discriminatory hiring system.
*628 The Supreme Court then points out that it is within that context that the meaning of § 703(h) must be determined. In making its determination, the Court finds 703(h) to be on its face merely a definition of what is not an illegal employment practice and thus not prohibited by the act; and further, that 703(h) "certainly does not expressly purport to qualify or proscribe relief otherwise appropriate under the remedial provisions . . . [of the act] in circumstances where an illegal discriminatory act or practice is found."
The Court also finds that the legislative history supports its position in this regard, and says that:
"[I]t is apparent that the thrust of the section is directed toward defining what is and what is not an illegal discriminatory practice in instances in which the post-Act operation of a seniority system is challenged as perpetuating the effects of discrimination occurring prior to the effective date of the Act. There is no indication in the legislative materials that § 703(h) was intended to modify or restrict relief otherwise appropriate once an illegal discriminatory practice occurring after the effective date of the Act is provedas in the instant case, a discriminatory refusal to hire. . . ." 424 U.S., at 761, 96 S.Ct., at 1263, 47 L.Ed.2d, at 460.
Mr. Justice Powell, with whom Mr. Justice Rehnquist joins and Mr. Chief Justice Burger concurs generally, says that he concurs "in the precise holding of Part II, which is that the Court of Appeals erred in interpreting § 703(h) as a bar in every instance, to the award of retroactive seniority relief to persons discriminatorily refused employment after the effective date of Title VII. . . ." Id., at 781, 96 S.Ct., at 1272, 47 L.Ed.2d, at 471-72.
As we view Franks v. Bowman as far as it affects Jersey Central, supra, it merely holds that while, as the Third Circuit said (p. 710), "a facially neutral company-wide seniority system without more,[5] is a bonafide seniority system and will be sustained even though it may operate to the disadvantage of females and minority groups as a result of past employment practices," evidence should be permitted to show the bona fides or lack thereof of the system.
We note that at the same time that the United States Supreme Court granted certiorari in Jersey Central Power & Light, it denied certiorari in Waters v. Wisconsin Steel Works of Intl. Harvester Co., 502 F.2d 1309 (7th Cir. 1974), which also had before it, inter alia, a consideration of Title VII, 42 U.S.C. 2000e-2(h). The circuit court there had this to say (p. 1318):
"We are of the view that Wisconsin Steel's employment seniority system embodying the `last hired, first fired' principle of seniority is not of itself racially discriminatory or does it have the effect of perpetuating prior racial discrimination in violation of the strictures of Title VII. To that end we find the legislative history of Title VII supportive of the claim that an employment seniority system is a `bona fide' seniority system under the Act. . . ."
And further, at page 1320:
"Title VII speaks only to the future. Its backward gaze is found only on a present practice which may perpetuate past discrimination. An employment seniority system embodying the `last hired, first fired' principle does not of itself perpetuate past discrimination. To hold otherwise would be tantamount to shackling white employees with a burden of a past discrimination created not by them but by their employer. Title VII was not designed to nurture such reverse discriminatory preferences. Griggs v. Duke Power Co., 401 U.S. 424, 430-431, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971)."
On March 14, 1975 the defendant moved for summary judgment averring that the plaintiff had failed to establish the jurisdiction of this court by showing that the defendant discriminatorily failed to recall her within the 180-day period prior to the filing of her discrimination claim with the EEOC *629 on February 28, 1973 and further averring that the defendant did not discriminatorily fail to recall her within the 180-day period since all layoffs and recalls during this period were made in accordance with the terms of a bona fide seniority system provided in a collective bargaining agreement with plaintiff's bargaining representative.
This motion was supported by an affidavit of the personnel manager of the defendant's Harrisburg plant which may be fairly summarized as follows:
Elizabeth Alleman was hired by defendant on March 7, 1967 (although it is not clear in what capacity[6]), and she was laid off from Code 5505 on March 12, 1971 and was not recalled.
At the time of her initial hiring the collective bargaining agreement between T.R.W. and the Union provided that seniority was on a company-wide basis, that employees were classified according to occupational codes; that layoffs and recalls would be made on the basis of company seniority; that an employee who worked one day or more in a calendar month would be credited with a full month's company seniority; that an employee who for any reason does not work one day in any 24 consecutive months shall lose all previously credited seniority.
While new contracts with the Union were executed every three years, as far as seniority is concerned we find no appreciable difference in any of them.
In accordance with the collective bargaining agreements in force during her employment at T.R.W., Elizabeth Alleman was credited with one month seniority for every month in which she worked one day in any capacity from the date of her first employment on March 7, 1967 and consequently when she was laid off from Inspection Employment Code 5505 on March 12, 1971 she had accumulated 44 months seniority.
All of the 1971, 1972 and 1973 layoffs and recalls were made strictly in accordance with Article VIII of the collective bargaining agreement then in force. At the time Elizabeth Alleman was laid off in 1971, all employees male and female in Inspection Code 5505 with less than 44 months seniority had already been laid off or had "bumped" into other jobs pursuant to Article VIII of the collective bargaining agreement then in force and on March 12, 1971 all employees in Inspection Code 5505 with 44 months seniority were laid off or "bumped" into other jobs.
Elizabeth Alleman was not recalled to work within two years of her layoff, and so on March 13, 1973 her recall rights terminated.
At that time as well as on February 28, 1973 when she filed her claim with EEOC, only employees with 47 or more months seniority whether male or female had been recalled to work in Inspection Code 5505. Elizabeth Alleman had not been recalled because she had only 44 months seniority.
The plaintiff filed no affidavit of facts but filed interrogatories, all of which were answered by defendant and which fail to show any discriminatory recall occurring within 180 days prior to February 28, 1973. At best the answers reveal what was virtually conceded, that prior to 1968 there were two categories of inspectors[7], Code 5505 and Code 5508, and that men occupied the former code and women the latter.
Plaintiff concedes in her complaint that some time after 1968 the company changed its policy so that men and women were thereafter "employed under the same class with equal seniority benefits."
Plaintiff's complaint therefore hinges on the continuing effect of conduct that occurred in 1968 and before, which she contends was discriminatory as to her because of her sex. But we have seen that a company-wide *630 seniority system, facially neutral, is not alone sufficient and that the plaintiff must show an affirmative act within the 180 days or her case must fail. Having failed to show such an act, summary judgment will be entered against her.
The parties had agreed to defer action on the requested class action certification until the court had ruled on the motion to dismiss, and thereafter they continued to defer any discovery or other proceedings on the class action matter until the court had ruled on the motion for summary judgment.
In our earlier memorandum, we had concluded and here repeat, that unless we have jurisdiction over the named plaintiff to this law suit we cannot certify a class action. See Snyder v. Harris, 394 U.S. 332, 337, 89 S.Ct. 1053, 22 L.Ed.2d 319, 324 (1969); Weiner v. Bank of King of Prussia, 358 F.Supp. 684, 694-95 (E.D.Pa.1973); Zahn v. Intl. Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). Cf., Wetzel v. Liberty Mutual, 508 F.2d 239, 246 (3d Cir. 1975). Having determined that summary judgment shall be granted because we have no jurisdiction, we do not reach the class action request.
Count III of the complaintthe only other remaining countrelies on pendent jurisdiction, and since we find no federal jurisdiction Count III cannot stand. Additionally, the Pennsylvania Human Relations Act does not appear to provide any remedy by a civil action against an employer but only a remedy through Commission action, and so, for this reason too, Count III cannot stand.
An appropriate order will be entered.
NOTES
[1] Memorandum and Order unreported. See, 42 U.S.C. § 2000e-5(e); Olson v. Rembrandt Printing Co., 511 F.2d 1228 (8th Cir. 1975).
[2] Emphasis ours throughout unless otherwise noted.
[3] Count I of the complaint charging a violation of 42 U.S.C. § 1981 and Count IV alleging a violation of the Fourteenth Amendment were both dismissed by agreement of counsel.
[4] The Seventh Circuit in late 1974, in Waters v. Wisconsin Steelworkers of Intl. Harvester, 502 F.2d 1309, had a similar problem.
[5] Emphasis the Third Circuit Court's.
[6] Answers to interrogatories reveal that she was laid off November 11, 1968 from Code No. 5508-Inspector, but the record fails to disclose when, prior to March 12, 1971, she was recalled.
[7] Defendant avers that the duties in 5505 were considerably different and much more numerous than those in 5508, and this plaintiff denies averring that men and women inspectors did identical work.