In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-4345

CAROLYN MACKEN, as next friend of her children
Shannon M. Macken and Sean M. Macken,

*Plaintiff-Appellant*,

*v.*

ERIK JENSEN, individually and as trustee of the
Richard J. Macken, Jr., Trust,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 02 C 6152—**Suzanne B. Conlon**, *Judge*.

ARGUED MAY 30, 2003—DECIDED JUNE 24, 2003

Before FLAUM, *Chief Judge*, and EASTERBROOK and
RIPPLE, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. To provide for his heirs,
Richard Macken established and funded a trust. Richard
had complete discretion over the disposition of the trust's
assets and unbridled power to change the trust's terms.
After his death in 2001 the trust's plan took effect. Benefi-
ciaries of the trust include Shannon and Sean Macken,
Richard's minor children by Carolyn Macken, his former
wife. Each of Richard's children becomes entitled to some

of the principal at age 25; the trustee has discretion to distribute interest and principal earlier "for the health, maintenance in reasonable comfort, education (including postgraduate) and best interests of the child".

Article IV §7 requires the trustee to "render an account of its receipts and disbursements at least annually to each adult income beneficiary." Shortly after Richard's death, Carolyn asked the trustee for an accounting, even though Shannon and Sean are minors. When the trustee declined, Carolyn filed this suit on their behalf under the diversity jurisdiction, 28 U.S.C. §1332, demanding an accounting and unredacted copies of the trust documents. The complaint alleged that all plaintiffs are citizens of Illinois and that Erik Jensen, who succeeded Richard as trustee, is a "resident" of Indiana. That allegation is defective—citizenship may differ from residence, see *Denlinger v. Brennan*, 87 F.3d 214 (7th Cir. 1996)—but, as Jensen concedes that he is a citizen of Indiana, the error does not require dismissal.

There are two other potential problems with subject-matter jurisdiction. One is the nonstatutory, but established, exception for the administration of decedents' estates. See *Markham v. Allen*, 326 U.S. 490, 494 (1946); *Dragan v. Miller*, 679 F.2d 712 (7th Cir. 1982). Richard's trust appears to be a will substitute. The assets he controlled through the trust at the time of his death bypassed probate, and it is unclear whether he even had a will. Federal taxing authorities treated the trust assets as part of Richard's holdings, and thus as subject to the estate tax. We held in *Storm v. Storm*, No. 02-3078 (7th Cir. May 13, 2003), that the probate exception applies to disputes about trusts used in lieu of wills, if the parties present an issue that would be resolved in probate had a will been used, or the issue is ancillary to such a dispute. Compare *Hamilton v. Nielsen*, 678 F.2d

709 (7th Cir. 1982), with *Georges v. Glick*, 856 F.2d 971 (7th Cir. 1988).

The second problem is the amount in controversy, which must exceed $75,000 for a case to proceed in federal court. Carolyn does not contend that the trust has failed to honor any financial obligation to Shannon or Sean. Instead she wants documents that will help her determine whether the principal is being prudently managed and the income applied according to the trust's terms. The complaint did not make any effort to estimate the value of this information, contending instead that jurisdiction is automatic because the trust corpus exceeds $75,000. The district judge rejected that proposition and dismissed the suit for want of subject-matter jurisdiction. Because we agree with the district judge's conclusion, we need not decide whether the probate exception to the diversity jurisdiction independently precludes the use of §1332.

Carolyn estimates (though without unredacted copies of the documents she cannot be sure) that the value of Shannon's and Sean's interests (taken jointly) is about $300,000. That comfortably exceeds $75,000, even when each child's interest is considered separately—as it must be. See *Snyder v. Harris*, 394 U.S. 332 (1969); *Clark v. Paul Gray, Inc.*, 306 U.S. 583 (1939). But there is no dispute about the value of the assets held in trust or either child's entitlement, so that sum is no more "in controversy" than the value of a Rolls Royce would be relevant to a dispute about the price of new shock absorbers. See *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955 (7th Cir. 1998); cf. *Caudle v. American Arbitration Association*, 230 F.3d 920 (7th Cir. 2000). Shannon and Sean seek equitable relief—a complete copy of the trust plus an accounting of its assets and cash flows—rather than damages. In a suit for injunctive relief, "the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 347

(1977). And, at least in this circuit, the object may be valued from either perspective—what the plaintiff stands to gain, or what it would cost the defendant to meet the plaintiff's demand. See *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 609-10 (7th Cir. 1997); *Uhl v. Thoroughbred Technology & Telecommunications, Inc.*, 309 F.3d 978, 983-84 (7th Cir. 2002). The cost to the trustee of turning over an unexpurgated copy is negligible, and Carolyn does not contend that an audit would cost the trust more than $75,000 to conduct. Indeed, after the district court dismissed the complaint, the trustee furnished Carolyn with a copy of the accounting that had been performed under Article IV §7. Any debate about the accounting is moot.

So what could be the value, from the minor children's perspective, of obtaining the full text of the trust instrument and all amendments? It is not as if the trustee were hiding information that ought to be disclosed before any litigation occurs and would, if known, reveal whether a substantive controversy exceeds the jurisdictional amount. Whether Carolyn is entitled to see the complete trust documents is the very matter in issue, so the question "what is the value of this secret?" cannot be elided. Their lawyer concedes that he hasn't a clue what the omitted information, which concerns other beneficiaries' entitlements (and may affect their privacy), may be worth to Shannon and Sean. The potential value would lie in monitoring the trustee to prevent improper distribution of income and principal to beneficiaries other than the children. Yet only a grave error by the trustee in determining other beneficiaries' entitlements could cost either Shannon or Sean $75,000, and Carolyn concedes that she has no reason to suspect that the trustee has made, or will in the future make, any error, let alone a whopper. So how could $75,000 per child now be in controversy?

Counsel's response invokes the principle that a case may be dismissed only if the court is certain that the plaintiff cannot recover the jurisdictional amount. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). See also *Pratt Central Park Limited Partnership v. Dames & Moore, Inc.*, 60 F.3d 350 (7th Cir. 1995). This is the rule for damages actions, not for equitable actions; it does not eliminate the need to place a realistic value on injunctive relief. Moreover, the rule of *St. Paul* supposes that the plaintiff has first made a good faith effort to estimate the stakes. No one is entitled to file in federal court and throw on the defendant (and the judicial system) the entire burden of estimation plus the risk of uncertainty in that process. To the contrary, Fed. R. Civ. P. 11(b)(3) requires the plaintiff (personally or through counsel) to establish evidentiary support, or at least a likelihood of obtaining that support, *before* filing suit in federal court. What Carolyn's lawyer contends—that a plaintiff may file a federal suit with no basis for an assertion that the stakes exceed $75,000, and then use the discovery process to have the merits resolved ahead of any jurisdictional inquiry (recall that this dispute is *about* access to potentially discoverable information)—does nothing other than confess a violation of Rule 11.

When the monetary value of a controversy cannot be estimated, litigation must commence in state court. If evidence developed in state litigation shows that the value exceeds the jurisdictional minimum, then the defendant may remove the suit under 28 U.S.C. §§ 1441(a) and 1446(b). A plaintiff may be able to move to federal court by dismissal and refiling if time remains in the statute of limitations. Not until it becomes evident that the information in these trust instruments is worth more than $75,000 should anyone knock on the federal court's door.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*