In re BRIDGESTONE/FIRESTONE, INC., TIRES PRODUCTS LIABILITY LITIGATION.

This Order Relates To:

Cobb,

v.

Bridgestone/Firestone, Inc., et al.

Davison,

v.

Bridgestone/Firestone, Inc., et al.

Felice,

v.

Bridgestone/Firestone, Inc., et al.

Ford,

v.

Bridgestone/Firestone, Inc., et al.

Kaufman,

v.

Bridgestone/Firestone, Inc.

Sanders,

v.

Bridgestone/Firestone, Inc., et al.

Spied,

v.

Bridgestone/Firestone, Inc., et al.

Weeks,

v.

Bridgestone/Firestone, Inc., et al.

Lahaniatis,

v.

Bridgestone/Firestone, Inc., et al.

Patterson,

v.

Bridgestone/Firestone, Inc., et al.

Lujick,

v.

Bridgestone/Firestone, Inc., et al.

Brett,

v.

Bridgestone/Firestone, Inc., et al.

Master File No. IP 00–9373–C–B/S.
MDL No. 1373.
Nos.IP 00–5155–C–B/S, IP 00–5052–C–B/S, IP 00–5040–C–B/S, IP 00–5003–C–B/S, IP 00–5001–C–B/S, IP 00–5007–C–B/S, IP 00–5035–C–B/S, IP 00–5136–C–B/S, IP 00–5071–C–B/S, IP 00–5074–C–B/S, IP 00–5073–C–B/S, IP 00–5217–C–B/S.

United States District Court,
S.D. Indiana,
Indianapolis Division.

April 11, 2003.

Mark Herrmann, Jones Day Reavis & Pogue, Thomas S. Kilbane, Squire Sanders & Dempsey LLP, Cleveland, OH, Mark Merkle, Krieg Devault LLP, Randall Riggs, Locke Reynolds LLP, Indianapolis, IN, Colin P. Smith, Holland & Knight LLC, Chicago, IL, Thomas G. Stayton, Baker & Daniels, Indianapolis, IN, for Defendants.

## ORDER ON MOTIONS FOR REMAND

BARKER, Judge.

In October of 2000, the Judicial Panel on Multidistrict Litigation ("Panel") issued its Transfer Order establishing the "*In re* Bridgestone/Firestone, Inc. ATX, ATX II, and Wilderness Tires Products Liability Litigation" for the purpose of coordinated or consolidated proceedings pursuant to 28 U.S.C. § 1407. Since that original transfer order, the Panel has transferred, under 47 certified transfer orders, a total of 740 cases. The vast majority of the cases in this MDL are actions seeking damages for personal injury or wrongful death.

A number of the cases transferred to the MDL, however, were brought as class actions on behalf of owners of the subject tires and, in some cases, on behalf of owners of the Ford Explorer.[1] These cases seek various types of money damages and injunctive relief, as explained more specifically below. Many of the complaints brought as class actions had originally been filed in state courts and were removed by the defendants to federal court, culminating in their transfer to this MDL. The plaintiffs in the above-captioned cases, maintaining that federal subject matter jurisdiction is lacking, have filed motions for remand to state court.[2]

Don Barrett, Barrett Law Office Pa, Lexington, MS, Victor Manuel Diaz Jr., Podhurst Orseck Josefsberg & Eaton, Miami, FL, Mike Eidson, Colson Hicks Eidson, Coral Gables, FL, Irwin B. Levin, Cohen & Malad, William E. Winingham, Wilson Kehoe & Winingham, Indianapolis, IN, for Plaintiffs.

John H. Beisner, O'Melveny & Myers, LLP, Washington, DC, Daniel P. Byron, Bingham McHale LLP, Indianapolis, IN,

---

1. None of the cases at issue here, however, defines the proposed class based on ownership of the Explorer, and none seeks "diminution of value" based on an alleged rollover defect in the Explorer.

2. The Court believes that this order addresses all remaining motions for remand filed with respect to class complaints, excepting those motions that have been mooted by settlement or other developments. Counsel should advise the Court if this assumption is not correct.

The Court is aware of the petition for writ of mandamus filed by the plaintiffs in three of

As will become apparent below, the analysis of each of these remand motions will turn primarily on the allegations of the complaint in that case, and specifically, on the relief requested. Certain issues are, however, implicated in multiple cases, so the Court will first address the principles that govern analysis of the issue and then apply those principles to each of the cases.

## DISCUSSION

### Applicable Law

■ As we have noted in ruling on numerous motions for remand, the law of the Seventh Circuit governs the removal and remand issues presented in these cases because the law of the circuit where the transferee court sits governs questions of federal law in MDL proceedings. *In re Korean Air Lines Disaster of September 1, 1983,* 829 F.2d 1171, 1176 (D.C.Cir.1987) ("the law of a transferor forum on a federal question ... merits close consideration, but does not have stare decisis effect in a transferee forum situated in another circuit"). Remand and removal, the issues now before the Court, are procedural questions that hinge on federal law. *In re Bridgestone/Firestone, Inc., ATX, ATX II,* 128 F.Supp.2d 1198 (S.D.Ind.2001). As a consequence, we invited all parties in these cases to submit supplemental briefing focusing on the law of the Seventh Circuit. Defendants Bridgestone/Firestone North American Tire ("Firestone") and Ford Motor Company ("Ford") jointly filed supplemental briefing, but only the plaintiffs in the *Weeks, Felice,* and *Kaufman* cases did so.[3]

### The Effect of the Master Complaint

■ Following the initial attorney conferences conducted by the Court and the appointment of plaintiffs' lead class counsel and management committees, the Court directed class counsel to prepare and file a Master Complaint that, according to the Case Management Order,

> shall apply to all pending Class Action Cases and to those subsequently filed, removed, or transferred to this Court as part of this proceeding. The Master Complaint shall be deemed to amend the complaints in the Class Action Cases to reflect the content of the Master Complaint, including all claims and theories contained therein.

Case Management Order (dated January 30, 2001) § V.A. The defendants maintain that the Master Complaint, which includes claims based on federal law, therefore "supersedes" all class complaints that had been transferred to the MDL, effectively amending those complaints to assert federal claims and thus creating federal subject matter jurisdiction over all class cases, even if federal jurisdiction would not have otherwise existed. The defendants also maintain that construing the Master Complaint in this manner is appropriate because (1) plaintiffs' class counsel initially

---

the above cases, which asks that this court be compelled to issue rulings on their remand motions. That petition, to the extent it was motivated by a belief that this court has purposefully declined to rule on those motions, is ill-founded. Several factors have resulted in the Court's issuance of these rulings later than it would have anticipated. As noted above, 740 cases have been transferred to this MDL, many of them with pending remand motions. The Court explained early in these proceedings that it intended to give priority to the remand motions in the personal injury/wrongful death cases, an intention as to which class counsel acquiesced. In addition, this court has been presented with a multitude of other motions in this MDL requiring rulings. Finally, the issue of certification of a nationwide class, which would have subsumed the classes defined in these cases, was pending in the federal courts until January of 2003.

**3.** Plaintiffs in some of the other cases later submitted further briefing on their motions.

did not seek rulings on the remand motions, and (2) the Case Management Order provided a vehicle for objection by plaintiffs who did not want to be bound by that Order, and none objected. We find each of these arguments to be without merit.

■ First, the primary purpose of the Master Complaint was to create the operative document by which the pre-trial procedures to be accomplished in this MDL—most notably, discovery, the class certification determination, and the testing of the class claims' legal sufficiency—could be completed.[4] It was not the Court's purpose for the Master Complaint to preclude challenges to federal subject matter jurisdiction in individual cases, nor have the defendants demonstrated to us as a general proposition that we *could* so construe it.[5] Moreover, the Case Management Order expressly provides that it "shall not make any entity a party to any action in which the entity has not been named, served or added in accordance with the Federal Rules of Civil Procedure." (*Id.* § I.A.3.)[6]

Second, although the defendants point to one district court's ruling that a particular class lawyer had forfeited the right to press for remand, the circumstances are not at all similar here. In *In re Compact Disc Minimum Price Antitrust Litigation,* 2001 WL 243490 (D.Me. Mar.12, 2001), one of plaintiffs' counsel in the MDL

attended the hearings, sought to be named lead counsel, and never mentioned his remand motion or voiced an objection to the consolidated complaint. He raised it only after the court declined to choose him as lead counsel. The court held under that under these circumstances, he was estopped to do so. *Id.* at *1–*2. In contrast, the plaintiffs in the above cases made clear early (and in some cases, often and adamantly) their position that federal subject matter jurisdiction was absent. Class liaison's initial representation to the Court that class plaintiffs were not at that time seeking rulings on the pending remand motions did not suggest, nor did the Court infer, that these plaintiffs would not or could not later seek rulings.[7] Indeed, very shortly thereafter, class liaison counsel provided a list of cases (including most of those that are the subject of this order) in which the plaintiffs sought rulings on their remand motions.

Finally, the provision of the Case Management Order that the defendants now say required the plaintiffs to make a formal, timely objection to preserve their remand motions has no application here. That provision says:

> Should parties in any *subsequently filed or transferred action* wish to object to the terms of this Order, they must do so

4. The Court also contemplated the possibility of a trial of the claims in the Master Complaint, but only in the class action context with respect to *unnamed* plaintiffs. *See* CMO § I.A.3.

5. For example, the defendants' position is at odds with the well-established general rule that the propriety of removal must be determined on the basis of the plaintiffs' pleadings at the time of the removal, without regard to subsequent developments. *See, e.g., In re Shell Oil Co.,* 970 F.2d 355 (7th Cir.1992).

Had this court's certification of a nationwide class been upheld, the remand motions

in these individual cases may have been rendered *moot,* but that is not the issue here.

6. The defendants assert that two plaintiffs in the above cases—Daryl Ford and Michael Cobb—are named plaintiffs in the Master Complaint. We will not decide whether this fact precludes them from seeking remand because we determine *infra* that their motions for remand must be denied for other reasons.

7. This representation was also made within the context of the Court's stated intention to make resolution of the remand motions in the personal injury/wrongful death cases a priority.

within twenty (20) days of receipt of this Order from Liaison Counsel.

*Id.* § I.B. (emphasis added). First, the defendants' argument begs the question of whether the Case Management Order established any procedure as to which class plaintiffs who wanted to preserve jurisdictional arguments had reason to object, a question we have just answered in the negative. More important, this provision simply creates the means by which parties transferred to the MDL after entry of the Case Management Order could object to its terms; it has no application to the cases, like all but one of those at issue here, that were already pending in the MDL at the time of the Order.

For these reasons, we find that the filing of the Master Complaint has no effect on the right of the plaintiffs in the above cases to challenge the subject matter jurisdiction of this court.

### *Diversity Jurisdiction—Amount in Controversy*

■ The defendants have grounded removal in all of these cases except *Davison* on diversity jurisdiction under 28 U.S.C. § 1332.[8] That basis for federal jurisdiction fails, say the plaintiffs, because the $75,000 amount in controversy requirement has not been met. The class complaints at issue, though they vary, typically seek compensatory damages, punitive damages, declaratory and/or injunctive relief, and attorney fees. Firestone and Ford, while acknowledging the well-established principle that class members' claims generally cannot be aggregated to reach the $75,000 threshold, nevertheless maintain, first, that a single plaintiff's money damages claim does exceed the jurisdictional minimum, and, second, that the cost of the plaintiffs' requests for injunctive relief, which would compel "wide ranging

compliance measures and significant changes in the defendants' business practices," can be aggregated for purposes of determining the amount in controversy.

Our analysis of these arguments must begin with an explication of the standards to be applied, including the allocation of burden. As noted above, this court cannot merely aggregate the damages sought by each member of the class, or for that matter, by all of the named plaintiffs. *Zahn v. Int'l Paper Co.*, 414 U.S. 291, 301, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 607 (7th Cir.1997). At least one named plaintiff must meet the $75,000 requirement, and if so, the court will have supplemental jurisdiction under 28 U.S.C. § 1367 over the claims of the other named plaintiffs and of the putative class members. *See, e.g.*, 123 F.3d at 607.

■ A defendant who removes a case from state to federal court has the burden of establishing the basis for federal subject matter jurisdiction, and if a plaintiff challenges the existence of federal jurisdiction, as have the plaintiffs here, the defendant must present *evidence* that the jurisdictional requirements are met. In connection with the amount in controversy requirement, it is not enough to point to a *possibility* that a plaintiff's claim could reach $75,000. *Id.* Rather, the evidence must establish at least a "reasonable probability" that the amount in controversy requirement is satisfied. *In re Bridgestone/Firestone*, 2001 WL 876921, *1 (S.D.Ind. May 11, 2001) (citing *NLFC v. Devcom Mid–America, Inc.*, 45 F.3d 231, 237 (7th Cir.1995); *King v. Wal–Mart Stores, Inc.*, 940 F.Supp. 213, 216 (S.D.Ind.

8. They also assert alternatively that federal question jurisdiction exists on the basis of complete preemption, an issue addressed *infra.*

1996); *Reason v. General Motors Corp.*, 896 F.Supp. 829, 834 (S.D.Ind.1995)).

■ With these principles in mind, we turn first to the requests for monetary relief contained in the complaints filed in the above cases. Four of the cases—*Lahaniatis, Patterson, Lujick,* and *Brett*—include identical requests for compensatory damages. These cases were brought on behalf of Connecticut purchasers of certain allegedly defective Firestone tires that have not been recalled. As compensatory damages, they seek the cost of replacement tires or the difference between the purchase price of the tires and their actual value, plus damages for the plaintiffs' inconvenience in attempting to secure replacement tires. (*See, e.g., Lahaniatis* Complaint ¶ 44.) Similarly, the plaintiffs in *Kaufman, Felice, Weeks, Sanders,* and *Cobb* seek compensatory damages based on the cost of repair, replacement, and inspection of the class members' tires. (*See, e.g., Felice* Complaint ¶ 1.) The complaint in *Kaufman* also asks the Court to impose a constructive trust of all "money or property that may have been acquired by defendants' unlawful, unfair and fraudulent business acts or practices" and to order payment of restitution. (Prayer for Relief) *Spied* seeks on behalf of a class the costs of replacement of the class members' tires, incidental costs for inconvenience, replacement, and installation, and compensation for pain/suffering/duress. (Complaint ¶ 20) The *Ford* complaint seeks similar compensatory damages, restitution, and disgorgement of the defendants' profits from their alleged misconduct. (Complaint ¶ 26).[9]

In the Court's estimation based on its review of the allegations of these complaints, all of the money damages claims fall far short of $75,000 for any single named plaintiff. Indeed, we have seen no evidence to suggest that the individual compensatory claims reach even one thousand dollars.[10] The defendants certainly have offered no evidence (as is their burden) convincing this court to a reasonable probability that a single plaintiff's money damages claim in any of the above cases approaches $75,000.

■ The defendants urge the Court to conclude, however, that the requests for punitive damages and recovery of attorney fees contained in each of these complaints, combined with the compensatory amount,

9. The complaints preface their description of damages with "including, without limitation" or similar language, but the complaints do not suggest a measure of damages that would be substantially greater. Both plaintiffs and defendants have devoted some argument to the proper compensatory figure for refund or replacement of a Ford Explorer, and some of the subject complaints may be read to seek money damages based on the Explorer. The complaints focus solely, however, on tire defect. And because our task is to determine whether, to a reasonable certainty, the minimum amount in controversy is met, we must employ common sense. Common sense counsels that even if the complaints are construed to seek damages related to the Explorer, the recoverable damages for a vehicle with defective tires would be measured by the cost of the *tires*, not the cost of the vehicle. *See Lennon v. Bridgestone/Firestone, Inc.*, 2000 WL 1570645 at *3 (E.D.Pa. Oct.19, 2000); *Beatty v. Bridgestone/Firestone, Inc.*, 2000 WL 1570590 at *3 (E.D.Pa. Oct.19, 2000) (reaching the same conclusion).

10. We view the restitution and disgorgement claims in the *Kaufman* complaint no differently. First, the class members' claims cannot be aggregated because they vary incrementally according to the number of purchasers (class members). As the Seventh Circuit explained it, "None of the victims would have an undivided right in a common fund or *res* such that if one claimant fell out the others' share would grow." 123 F.3d at 608. Second, the complaints define these claims in terms of the defendants' *profits* on the sales of the tires, which would be less than a compensatory claim based on repair or replacement of the tires.

could reach the jurisdictional threshold. Like compensatory damages, class claims for punitive damages and fees cannot be aggregated to satisfy the jurisdictional minimum. *See, e.g., Brand Name Prescription Drugs,* 123 F.3d at 608–09. Moreover, where the bulk of the amount in controversy would depend on the request for punitive damages and fees, we approach the defendants' assertion with skepticism. *See, e.g., Del Vecchio v. Conseco, Inc.,* 230 F.3d 974, 979 (7th Cir.2000); *Anthony v. Security Pacific Financial Services,* 75 F.3d 311, 314 (7th Cir.1996).

To meet the jurisdictional minimum, each plaintiff class member's share of a punitive damage and attorney fee award would have to be around *one hundred times* that plaintiff's estimated compensatory recovery.[11] The defendants' contention that such a recovery *could happen* is not enough. They have pointed to no evidence—such as similar awards in similar cases—that suggests to the Court a reasonable probability of such a large per plaintiff award.[12]

In sum, the defendants have not demonstrated to the Court even a credible possibility—much less a "reasonable probability"—that a single plaintiff's money damages claim in these cases satisfies the jurisdictional threshold.[13] Having determined that, we now consider the defendants' argument that the requests for declaratory and injunctive relief asserted by the plaintiffs satisfy the amount in controversy requirement.

 We will bypass this inquiry in connection with the remand motions filed in *Lahaniatis, Patterson, Lujick,* and *Brett,* however, because those complaints seek only money damages and no injunctive relief. Despite the complete absence of an injunctive request in the complaint and plaintiffs' representations to the transferor court to that effect, Ford has argued that we should read these complaints as seeking injunctive relief, thus (1) causing the cases to meet the amount in controversy, and (2) making the complete preemption doctrine applicable. Ford bases its remarkably aggressive position on a single fact: on the civil summons form attached to their complaints, the plaintiffs checked a box that mentioned relief "in addition to or in lieu of money damages." It reasons that that check mark transformed the plaintiffs' claim into an action seeking a *recall.* Ford provides no legal or factual justification for this giant leap. The motions for remand in *Lahaniatis, Patterson, Lujick,* and *Brett* are therefore GRANTED. The arguments made in support of the removals[14] lead us to find that the

---

**11.** Actually, the proportion could be even more lop-sided. To the extent that the attorney fees were awarded from the "common fund" of the plaintiffs' compensatory recovery, adding those fees to meet the jurisdictional minimum would be impermissibly counting them twice.

**12.** The defendants' contention also depends on a punitive damages award that, because it so greatly exceeds the compensatory award, would be constitutionally suspect. *See State Farm Mutual Ins. Co. v. Campbell,* —— U.S. ——, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003) (citing *BMW of North America v. Gore,* 517 U.S. 559, 581–82, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)) ("[F]ew awards exceeding a single-digit ratio between punitive and

compensatory damages, to a significant degree, will satisfy due process.")

**13.** In several of these cases, the complaints expressly disclaim money damages at or above $75,000. In light of our resolution of the questions above, we do not address the defendants' argument that these disclaimers are ineffective.

**14.** Ford also argued that some hypothetical class member may have sustained personal injuries in addition to the economic harm alleged in the complaint, thus putting a more significant amount in controversy. Such an assertion is grossly insufficient to meet the defendants' burden of demonstrating, with evidence, a reasonable probability that a named

defendants' removal of these four cases warrants an award to the plaintiffs of the fees and costs they incurred as a result of the removals, pursuant to 28 U.S.C. § 1447(c).[15] *See Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 411 (7th Cir.2000) (§ 1447(c) is a fee-shifting statute presumptively entitling plaintiffs to costs and fees for improper removal). The plaintiffs shall file their petition for fees and costs within fourteen days of the date of this Order; defendants shall then have fourteen days to file any response.

■ Determination of the amount in controversy implicated by a class complaint's request for declaratory or injunctive relief is also governed by the holding of *Zahn*: as a general rule, the value of the relief requested on behalf of the class cannot by aggregated to reach the jurisdictional minimum. *See, e.g., Brand Name Prescription Drugs*, 123 F.3d at 610. In the Seventh Circuit, this means that the value of the relief to a single plaintiff or the cost, from the defendant's perspective, of that relief as to a single named plaintiff must be at least $75,000. *See Uhl v. Thoroughbred Technology and Telecommunications*, 309 F.3d 978, 983 (7th Cir.2002); *Brand Name Prescription Drugs*, 123 F.3d at 609 (both affirming Seventh Circuit's adherence to the "either viewpoint" approach).

Firestone and Ford maintain, however, that the relief requested by the plaintiffs in these cases triggers an exception to the no aggregation rule. They rely principally on the Supreme Court's holding in *Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), and the Seventh Circuit's discussion in *Brand Name Prescription Drugs*, the latter of which has been interpreted and applied in a few decisions

from the Northern District of Illinois. In *Snyder*, the Supreme Court stated that plaintiffs' claims for injunctive relief can be aggregated where "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." 394 U.S. at 335, 89 S.Ct. 1053. Firestone and Ford argue that the various requests for injunctive relief in the complaints at issue would require major changes in their policies and operations, would impose significant ministerial costs, and should therefore be similarly viewed as requests to enforce a "single title or right in which [the plaintiffs] have a common and undivided interest."

In *Brand Name Prescription Drugs*, the Seventh Circuit considered several potential bases for satisfaction of the amount in controversy requirement in the context of a request for classwide injunctive relief. In noting that the Seventh Circuit has adopted the "either viewpoint" approach (that is, valuing injunctive relief from either the plaintiff's or the defendant's perspective), the court explained:

> Looked at from the defendants' standpoint, the minimum amount in controversy would be present if the injunction would require some alteration in the defendant's method of doing business that would cost the defendant at least the minimum statutory amount.

123 F.3d at 609. The court also considered the possibility that "a defendant's clerical or ministerial costs of compliance [with an injunction] might carry a case across the threshold." *Id.* at 610.

Firestone and Ford have relied on this discussion and decisions interpreting it to assert that, under the circumstances here, the plaintiffs' claims for injunctive relief

---

plaintiff presents an amount in controversy of at least $75,000.

**15.** Firestone is equally liable with Ford for these fees and costs because it expressly adopted Ford's arguments.

must be aggregated for purposes of determining the amount in controversy. In particular, they emphasize the following language from the Northern District of Illinois in *Jacobson v. Ford Motor Co.,* 1999 WL 966432 (N.D.Ill. Sept.30, 1999):

[T]he Seventh Circuit [in *Brand Name Prescription Drugs* ] has identified three ... situations—measured by the cost of enforcing relief to the defendant—in which the amount-in-controversy requirement could be met, namely, where the requested injunction would: 1) require some alteration in the defendant's business practices that would cost more than the statutory amount; 2) force the defendant to forgo a benefit that is worth more than the threshold amount; or 3) entail clerical or ministerial costs of compliance greater than the statutory amount.

*Id.* at *3. Aggregation is thus allowed, the defendants argue, based on the plaintiffs' requests for "alteration in [their] business practices" and their significant "clerical or ministerial costs of compliance."

We do not read *Brand Name Prescription Drugs* exactly this way. First, although the Seventh Circuit discussed the cost to the defendant of an injunction that would require a change in its method of doing business,[16] it in the next breath reiterated the no aggregation rule, even noting the "paradoxical" result that a defendant will normally not be willing to pay a named class plaintiff as much to resolve a claim for injunctive relief as it would pay in a single plaintiff case, thus making the class claim more difficult to remove to federal court. Consistent with that limitation, the Court went on to emphasize:

Whatever the form of relief sought, each plaintiff's claim must be held separate from each other plaintiff's claim from both the plaintiff's and the defendant's

standpoint. The defendant in such a case is deemed to face multiple claims for injunctive relief, each of which must be separately evaluated. The question then becomes ... whether each plaintiff is asserting an individual right to an undivided interest in something.... *The test, we repeat, is the cost to each defendant of an injunction running in favor of one plaintiff; otherwise the non-aggregation rule would be violated.*

123 F.3d at 610 (citations omitted; emphasis added). Moreover, the above-quoted language in the *Jacobson* decision implicitly acknowledges this limitation, saying that the situations identified *could* serve to meet the amount in controversy requirement.

And as to Firestone and Ford's assertion that significant clerical or ministerial costs of compliance with an injunction can be viewed in the aggregate, a position apparently supported by *Jacobson,* we must disagree. We read the *Brand Name Prescription Drugs* opinion as, at best, acknowledging but not deciding the issue or, more likely, rejecting the argument:

But if [this] argument were accepted, every case, however trivial, against a large company would cross the threshold, ... even if the plaintiff were asking for an injunction against disclosing his unlisted phone number. It would be an invitation to file state-law nuisance suits in federal court. We needn't bite this bullet. The defendants have made no effort to show that what is conceivable is also probable by quantifying the internal cost of compliance to each of them and then adding it to a plaintiff's compensatory damages and penalty entitlement.

123 F.3d at 610.

With the applicable analytical framework in place, we now examine the re-

---

**16.** We use the word "discussed" because the court expressly noted that the defendants had

not argued this basis for jurisdiction. 123 F.3d at 609.

quests for injunctive relief put at issue by these remand motions. In *Kaufman, Felice, Weeks, Sanders,* and *Cobb,* the plaintiffs ask the Court to require a recall and replacement of the subject tires (*e.g., Kaufman* Complaint ¶ 69). The Prayers for Relief in each of these complaints further ask the court for an order declaring the defendants financially responsible for notice to class members, declaring limitations of remedies and exclusion of warranties unenforceable, and declaring that defendants have breached express and implied warranties. In *Kaufman,* the plaintiffs also ask for establishment of a constructive trust of all money acquired from the defendants' allegedly wrongful conduct and the payment of restitution. Finally, the *Kaufman, Felice, Weeks, Sanders,* and *Cobb* complaints all ask the Court to enjoin the defendants:

> from committing the acts complained of herein, consisting of manufacturing, distributing, advertising and marketing ATX, ATX II and Wilderness tires as currently manufactured and designed, from attempting to limit class members' remedies and to exclude the implied warranties, from fraudulently concealing and suppressing from class members the defects in the ATX, ATX II and Wilderness tires when contacted by class members.

The Seventh Circuit's decision in *Brand Name Prescription Drugs* focuses our inquiry on the likely cost to Firestone or Ford of complying with such an order running in favor of, say, Lawrence Kaufman. That decision, shaped by *Zahn* and *Snyder,* requires us to consider that cost *only* as it relates to Lawrence Kaufman.

If that cost is not apportionable or divisible, that is, if the cost will not increase incrementally if the injunction runs in favor of additional plaintiffs, then the Court can view that total cost as the amount put in controversy by the request for injunctive relief. We find that the requests for recall/replacement of the tires, the creation or resurrection of warranty rights, and establishment of a constructive trust and payment of restitution *are* apportionable among the individual plaintiffs because the cost to the defendants of these measures would depend on the number of claimants as to whom the relief was awarded. Put another way, the cost will incrementally increase based on the number of purchasers covered by the award. *See Brand Name Prescription Drugs,* 123 F.3d at 608. These requests for injunctive relief therefore get the defendants no closer to the jurisdictional threshold than the compensatory damages claims. Moreover, we do not consider the cumulative clerical and ministerial costs associated with the requested class notice to count toward the requirement.[17]

However, the request for injunction quoted above, which would prohibit the defendants' "manufacturing, distributing, advertising and marketing [of] ATX, ATX II and Wilderness tires as currently manufactured and designed" *would* cost Firestone and Ford the same (or nearly the same) whether the injunction runs in favor of Lawrence Kaufman or in favor of the entire class of California purchasers he seeks to represent. That cost, it appears to a reasonable certainty, far exceeds $75,000 and thus supports the Court's exercise of diversity jurisdiction.[18] The motions for remand in *Kaufman, Felice,*

---

17. This conclusion rests both in our view, noted above, that the Seventh Circuit did not endorse such an approach with respect to clerical and ministerial costs, and in our assumption that the Seventh Circuit, in any event, was not referring to the costs of class notice. Otherwise, virtually every case brought as a class action would meet the amount in controversy.

18. Our approach, though articulated somewhat differently from the inquiries used by the Northern District of Illinois in *Jacobson, Trujillo v. Bridgestone/Firestone, Inc.,* 2000

*Weeks, Sanders,* and *Cobb* are therefore DENIED.

In *Ford,* the injunctive relief requested by the complaint is even more far-reaching: it asks that the court order a public information campaign to correct defendants' allegedly improper conduct and dissemination of false and misleading information; it requests an injunction prohibiting the defendants' promotion, marketing, and sale of their products and their alleged practices employed to "disguise the nature and indications of prior tire testing or related safety reports." (Complaint ¶ 3). The prayer also asks for, among other things, a "suspension of defendants' right and ability to conduct business in California" for an unspecified period. These forms of relief, if granted, would also cost the defendants the same whether running in favor of Daryl Ford or the entire class, and that cost would exceed $75,000. These claims for declaratory and injunctive relief therefore satisfy the jurisdictional minimum. The motion for remand in *Ford* is thus DENIED.

The request for injunctive relief in *Spied* is not as specific as those described above: it asks that the Court enjoin the "acts/omissions complained of herein ultimately found to be illegal." Although more vague, this request unambiguously incorporates the wrongful acts alleged in the complaint. Those acts include, for example, affirmative misrepresentations in the defendants' advertising that the tires were safe and merchantable (¶ 37) and the marketing of defective tires (¶ 54). If the Court issued an injunction prohibiting this conduct, the cost to a defendant would be the same no matter how many plaintiffs obtained that award, so we find here as well that the amount in controversy requirement is met. The motion for remand in *Spied* is DENIED.

### Complete Preemption

The final question to be addressed is whether the claims asserted by the plaintiffs are, as urged by the defendants, completely preempted by the Motor Vehicle Safety Act, 49 U.S.C. §§ 30101–69 ("Safety Act"). If so, the claims are deemed to arise under federal law, thus supplying federal question jurisdiction under 28 U.S.C. § 1331.

It is necessary to address this question only with reference to the *Davison* complaint because the remand motions in all the other cases have been resolved on other grounds.[19] The plaintiffs' complaint in *Davison* seeks money damages only, contains no reference to a federal statute, and makes no request for a tire or vehicle recall. The complaint, in fact, makes no claim for injunctive relief at all. Still, the defendants removed the action to federal court, asserting that the claims were completely preempted and therefore deemed for jurisdictional purposes to arise under federal law.

The defendants have attempted to bridge the gap between the money damages sought by the complaint and the sort of injunctive relief that would be a necessary predicate for a colorable complete preemption argument in two ways. First, they assert that the plaintiffs' damages claim based on the cost of replacement tires is, in substance, a request for a recall.

---

WL 1690308, at *2 (N.D.Ill. Nov.1, 2000), and *Pshebelski v. Ford Motor Co.,* Civ. No. 00–1360 (N.D.Ill.Dec. 28, 2000), yields the same result on this issue.

**19.** As we explained above, the defendants' complete preemption argument in *Lahaniatis, Patterson, Lujick,* and *Brett*—where no injunctive relief was even sought—teeters on a tortured justification, and we will devote to it no further judicial resources.

We have found subject matter jurisdiction present in *Kaufman, Felice, Weeks, Cobb, Sanders, Ford,* and *Spied* based on 28 U.S.C. § 1332, so we do not address complete preemption in the context of these complaints.

Although a footnote in one district court decision supports this argument (*see Namovicz v. Cooper Tire & Rubber Co.*, 225 F.Supp.2d 582, 584 n. 4 (D.Md.2001)), we decline to follow it, as have other courts. (*See infra* note 23.)

■ The second basis for the defendants' complete preemption argument is the fact that, although the complaint sought no injunctive relief, on September 1, 2000—the same day the defendants filed their removal papers—the plaintiffs filed an Application to Send Court Approved Notice to Class Members and Motion for Temporary Injunction ("Application") in

the state court where the case was/had been pending.[20] The plaintiffs argue that, because the Application was not pending when the defendants removed this action, we must ignore it in determining the propriety of removal. As a general rule, that is true. *See, e.g., In re Shell Oil Co.*, 970 F.2d 355 (7th Cir.1992). Despite this general rule, we *will* consider the relief requested in the Application in determining the motion for remand. First, the circumstances surrounding the timing of the parties' filings counsel against a resolution based solely on the sequence of the filings.[21] Second, whether removal was

---

**20.** We do not know who got to which courthouse first on that day, and the plaintiffs' papers confuse us on that issue. In Plaintiffs' Motion to Ascertain Status of Remand, filed in this court on May 20, 2002, the plaintiffs informed us that "[o]n September 1, 2000, *after* plaintiffs filed an application for temporary injunction against defendants, defendants removed the action to [federal court]." Six weeks later in another filing with this court (Davison Plaintiffs' Reply to Defendants' Motion to Remand, filed August 5, 2002, at p. 6), the plaintiffs asserted that "the petition for removal occurred *before* plaintiffs filed the request for injunctive relief." The latter order seems more plausible because the Notice of Removal does not mention the Application, but, as revealed below, we do not allow this timing question to be dispositive of the central issue before us.

**21.** We do not, however, accept at face value the defendants' characterization of the timing of the plaintiffs' Application as a "ploy designed to defeat the proper exercise of federal jurisdiction." (Defendants' Response to Davison Plaintiffs' Motion to Remand, filed July 15, 2002, at p. 5) The plaintiffs did not wait for the thirty-day removal period to run before filing their Application, and, even if they had, the defendants would have had thirty days from the filing of the Application to file a removal notice, *if* in fact that filing was the event that first made the action removable (*see* 28 U.S.C. § 1446(b)). The record in this case could be read to suggest, rather, that the defendants jumped the gun, removing this case before the plaintiffs sought injunctive

relief (perhaps on the information that they were about to do so) and without the small measure of support that the *Namovicz* footnote would several months later provide.

The defendants' inflammatory rhetoric is particularly inappropriate in light of their own lack of candor to the court. In Ford's Notice of Removal, filed September 1, 2000, in the United States District Court for the Middle District of Tennessee, Ford made (in ¶ 1) the following representation to the district court:

Plaintiffs seek "all damages and injury suffered by them," *an injunction requiring the immediate replacement of the tires*, attorneys' fees and "such other, further and general relief, whether at law or in equity to which they may be justly entitled." (Compl., Request for Relief.)

(Italics supplied.) This language was crafted to create the perception that the complaint sought the relief set out in italics, when such a request was nowhere to be found in the complaint. Likewise, in paragraph 3 of the Notice of Removal, Ford stated that:

the complaint seeks an injunction from this Court requiring the defendants to immediately replace *all* ATX, ATX II and Wilderness tires. (Compl. ¶ 6, Request for Relief.)

(Emphasis in original.) Neither paragraph 6 nor the request for relief says what Ford represented to the district court. Firestone joined in the Notice of Removal and, hence, in these misrepresentations. The defendants' conduct weighs heavily in the Court's consideration of a fee and cost award under 28 U.S.C. § 1447(c).

proper when effected does not fully answer the question of whether subject matter jurisdiction can be properly exercised. *See In re AT & T Fiber Optic Cable Installation Litigation,* 2001 WL 1397295 (S.D.Ind. Nov.5, 2001) (citing cases).

The Application seeks an order temporarily enjoining the defendants from producing or selling SUVs with the subject tires and requiring the defendants to provide notice to class members of "heightened risk of injury" from continued use of the tires and of the "urgent necessity" of replacing them. (Application at p. 2) This claim for relief, argues Ford and Firestone, is completely preempted by the Safety Act, thus creating federal question jurisdiction.

■ Generally, when a defendant argues for "preemption" it means one of two things: that federal law *governs* the cause of action; or that federal law not only *governs* the cause of action, but *occupies the field* in which the complaint allegations arise. The former meaning is usually referred to as "conflict preemption" and gives rise to a *defense;* the latter meaning is usually referred to as "complete preemption" and gives rise to original federal jurisdiction and the possibility of removal to federal court. The Supreme Court has noted that:

> Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court. *Gully v. First National Bank, supra* [299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936)]. One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character. For 20 years, this Court has singled out claims

pre-empted by § 301 of the LMRA for such special treatment. *Avco Corp. v. Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968).

*Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). *See Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073 (7th Cir. 1992).

■ When a defendant uses preemption as a defense, the case is not removable to federal court, because the *defense,* and not the *complaint,* raises the federal issue; where that is true, a federal court would not have had original jurisdiction had it been filed there. In such a case, the defendant is free to argue in *state* court that federal law preempts the cause of action because federal law *governs* it. *See Lehmann v. Brown,* 230 F.3d 916, 919–20 (7th Cir.2000); *Blackburn v. Sundstrand Corp.,* 115 F.3d 493, 495 (7th Cir.1997) (holding that a defendant's federal defense to a claim arising under state law "does not create federal jurisdiction and therefore does not authorize removal"). This is often called "conflict preemption."

By contrast, where, as here, a defendant argues that a federal law—the Safety Act—*completely* preempts a state cause of action, it means that the case is federal by its very nature, regardless of how the complaint is styled. As Judge Easterbrook explained in *Lehmann,* 230 F.3d at 919–20:

> Unfortunately "complete preemption" is a misnomer, having nothing to do with preemption and everything to do with federal occupation of a field. The name misleads because, when federal law occupies the field (as in labor law), every claim arises under federal law. *See In re Amoco Petroleum Additives Co.,* 964 F.2d 706, 709–10 (7th Cir.1992). Any attempt to present a state-law theory then is artful pleading to get around the federal ingredient of the claim; courts

look at substance, see the importance of federal law to recovery, and permit removal. *Franchise Tax Board of California v. Construction Laborers Vacation Trust,* 463 U.S. 1, 22, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). ERISA occupies much of the field of pension and fringe benefits; the size and distribution of these benefits depends on federal law, so *Metropolitan Life* holds that a claim to benefits necessarily "arises under" federal law no matter how it is pleaded. State law is "completely preempted" in the sense that it has been replaced by federal law—but this happens because federal law takes over all similar claims, not because there is a preemption defense. *See, e.g., Anderson v. Humana, Inc.,* 24 F.3d 889 (7th Cir.1994) (discussing the provision of information to beneficiaries, another respect in which federal law has completely taken over).

Only two areas of federal law completely—or, more precisely, *almost* completely—occupy their respective fields. One is labor relations, which is dominated by the National Labor Relations Act and the Labor Management Relations Act; the second is ERISA. *See Rice v. Panchal,* 65 F.3d 637, 643 (7th Cir.1995).

We have gone to these lengths to explicate the distinction between conflict preemption and complete preemption because the defendants have attempted to blur it. Their arguments that the relief the plaintiffs seek will "frustrate" the procedures contemplated by the Safety Act and will "smack up against" federal tire recall law, invoke inquiries relevant in the conflict preemption argument, but they miss the mark with respect to complete preemption.[22]

Although the Supreme Court has not established a rigid test for complete pre-emption, the cases reveal two central inquiries: first, whether Congress in enacting the federal statutory scheme clearly manifested an intent to completely preempt the claim so as to make it removable to federal court (*see Metropolitan Life,* 481 U.S. at 66, 107 S.Ct. 1542), and second, whether the federal statutory scheme provides for some cause of action granting " 'jurisdiction over the parties and the subject matter' " (*see Caterpillar Inc. v. Williams,* 482 U.S. 386, 391 n. 4, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)).

Nothing in the Safety Act demonstrates a Congressional intent to completely preempt all claims relating to motor vehicle safety. The Safety Act itself expressly evidences the *opposite* intent. It contains a savings clause (49 U.S.C. § 30103(e)) that provides: "Compliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law." Moreover, section 30103(d) provides that a tire recall conducted pursuant to the Safety Act does not displace "any rights and remedies under other laws of the United States or a State." In addition, nothing in the Act's legislative history as cited by the defendants leads the Court to conclude that Congress intended to preempt completely the state-law claims asserted by the plaintiffs.

This view is amply supported by virtually every court that has previously addressed the issue. *See Burgo v. Volkswagen of America,* 183 F.Supp.2d 683, 690 (D.N.J.2001); *Campbell v. General Motors Corp.,* 19 F.Supp.2d 1260, 1273 (N.D.Ala. 1998) ("The [Safety Act] fails each and every one of these tests [for application of the complete preemption doctrine]."); *Richards v. Michelin Tire Corp.,* 786

**22.** For example, the defendants rely on this Court's ruling that the recall claims contained in the Master Complaint fail on the basis of conflict preemption. *See In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation,* 153 F.Supp.2d 935 (S.D.Ind.2001).

F.Supp. 959, 962–63 (Congress did not intend Safety Act to occupy the entire regulatory field of automotive safety; no court has held otherwise in all the years since its enactment); *Coardes v. Chrysler Corp.*, 785 F.Supp. 480, 482 n. 3 (D.Del.1992); *Amrhein v. Quaker Oats Co.*, 752 F.Supp. 894, 896–97 (E.D. Mo.1990) (express language in savings clause and legislative history do not support finding that Congress intended Safety Act to completely preempt state law claims); *Talalai v. Cooper Tire & Rubber Co.*, 2001 WL 1877265 at *8 (D.N.J. Jan.9, 2001); *Lennon v. Bridgestone/Firestone, Inc.*, 2000 WL 1570645 at *3 (E.D.Pa. Oct.19, 2000); *Beatty v. Bridgestone/Firestone, Inc.*, 2000 WL 1570590 at *3 (E.D.Pa. Oct.19, 2000); *Carden v. Bridgestone/Firestone, Inc.*, 2000 WL 33520302 at *3 (S.D.Fla. Oct.18, 2000); *Farkas v. Bridgestone/Firestone, Inc.*, 2000 WL 1425018 at *4 (W.D.Ky. Sept.22, 2000).[23]

Second, we find that the Safety Act does not supplant the plaintiffs' state law claims with a federal claim. No provision in the act provides for some cause of action granting "'jurisdiction over the parties and the subject matter.'" *See Caterpillar*, 482 U.S. at 391 n. 4, 107 S.Ct. 2425 (citation omitted). And to this court's knowledge, every court addressing this issue has held that the Safety Act does not provide a private right of action. *See Handy v. General Motors Corp.*, 518 F.2d 786, 788 (9th Cir.1975); *Burgo*, 183 F.Supp.2d at 688–89; *Campbell*, 19 F.Supp.2d at 1274 (no complete preemption because Safety Act "provides absolutely no private right of action for consumers"); *Ecker*, 2002 WL 31654558; *Carden*, 2000 WL 33520302 at *3.

For these reasons, we hold, consistent with nearly every other court deciding the issue, that the Safety Act does not completely preempt the plaintiffs' claims. There being no basis for the exercise of federal subject matter jurisdiction, the Court GRANTS the *Davison* plaintiffs' motion for remand. The Court further finds that the defendants' removal of this case warrants an award to the plaintiffs of the fees and costs they incurred as a result of removal, pursuant to 28 U.S.C. § 1447(c).[24] *See Garbie v. DaimlerChrysler Corp.*, 211 F.3d at 411. The plaintiffs shall file their petition for fees and costs within fourteen days of the date of this Order; defendants shall then have fourteen days to file any response.

### CONCLUSION

For the reasons stated above, the Court enters its order on the motions for remand filed in the above-captioned cases as follows: The motions for remand in *Lahaniatis, Patterson, Lujick, Brett,* and *Davison* are GRANTED. *Lahaniatis* is REMANDED to the Superior Court of the State of Connecticut, Judicial District of Ansonia–Milford at Milford, Connecticut. *Patterson* is REMANDED to the Superior Court of the State of Connecticut, Judicial District of Ansonia–Milford at Milford, Connecticut. *Lujick* is REMANDED to the Superior Court of the State of Connecticut, Judicial District of New Haven at

**23.** Only the district court in *Namovicz* has found complete preemption. That court did not expressly address Congressional intent, nor did it acknowledge the overwhelming weight of authority to the contrary. Other courts have declined to follow *Namovicz* (*see Burgo*, 183 F.Supp.2d at 689; *Ecker v. Ford Motor Co.*, 2002 WL 31654558 (C.D.Cal. Nov.12, 2002)), as do we.

**24.** As explained at *supra* note 21, this determination is based in part on Ford's representations to the transferor district court made in connection with its removal papers. Firestone is equally liable with Ford for these fees and costs because it joined in the notice of removal.

New Haven, Connecticut. *Brett* is RE-MANDED to the Superior Court of the State of Connecticut, Judicial District of Fairfield at Bridgeport, Connecticut. *Davison* is REMANDED to the Eighth Circuit Court of Tennessee, Twentieth Judicial District at Nashville. The plaintiffs in the preceding five cases are awarded their fees and costs incurred as a result of removal, pursuant to 28 U.S.C. § 1447(c). The plaintiffs shall file their petition for fees and costs within fourteen days of the date of this Order; defendants shall then have fourteen days to file any response. The motions for remand in *Kaufman, Felice, Weeks, Sanders, Cobb, Ford,* and *Spied* are DENIED.