In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1206

ALLIANCE FOR WATER EFFICIENCY,

*Plaintiff-Appellee,*

*v.*

JAMES FRYER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 115 — **Jeffrey Cole**, *Magistrate Judge.*

ARGUED SEPTEMBER 9, 2015 — DECIDED DECEMBER 22, 2015

Before EASTERBROOK, KANNE, and WILLIAMS, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Alliance for Water Efficiency engaged James Fryer to analyze how urban water agencies' programs affect the elasticity of demand for water during droughts. The Alliance agreed to coordinate several sponsors of Fryer's analysis. Fryer prepared a draft report, which left the Alliance dissatisfied, and it filed this suit in an effort to prevent Fryer from publishing the report. But the Califor-

nia Department of Water Resources, one of the project's sponsors, is happy with Fryer's work and willing to present his findings under its auspices.

The parties consented to final decision by a magistrate judge. See 28 U.S.C. §636(c)(3). After settlement negotiations, the parties agreed to go their separate ways. Fryer promised to remove the Alliance's name from his report and to issue it under California's sponsorship. He also promised to provide his data to the Alliance, which would issue a separate report in its own name. During a hearing on March 13, 2014, the judge stated (without objection from the litigants) that "[t]he parties have decided that they have a binding settlement agreement today even though there will be a written agreement [later]." Counsel then proceeded to "put on the record the material terms of the settlement." The first and foremost of these is that "James Fryer may prepare his own report for DWR [California] provided he removes all references to the Alliance for Water Efficiency, AWE, in his report. Conversely, AWE will prepare its own report for the remaining funding participants of the Project Advisory Committee excluding DWR."

Acrimony resumed when Fryer declined to sign the more elaborate written text that the Alliance's counsel prepared. Fryer contended that the Alliance had introduced terms beyond those agreed on March 13. Drafts and counterdrafts were circulated; complete written agreement was never reached. That left the March 13 exchange as the definitive settlement. See, e.g., *PFT Roberson, Inc. v. Volvo Trucks North America, Inc.*, 420 F.3d 728 (7th Cir. 2005) (agreement on some terms does not allow a court to fill in contested terms).

The Alliance protested to the court when Fryer circulated a new draft report that identified, as providers of data and assistance, some of the organizations that had participated through a committee that the Alliance had organized. The Alliance maintained that naming any organization that had dealt with Fryer through the Alliance would imply that the report had the Alliance's imprimatur. Fryer, by contrast, contended that the organizations wish to be identified in his report and that a consultant is entitled to name sponsors and collaborators.

The magistrate judge concluded that paragraphs 1.0(3) and 1.1 of the Alliance's proposed draft (which Fryer had not signed) commits Fryer to remove from his report any reference to entities that worked with him through or in connection with the Alliance, unless those entities take the initiative to contact him and say that he can mention their names. The judge wrote an opinion to that effect, 2014 U.S. Dist. LEXIS 150176 (N.D. Ill. Oct. 22, 2014), and entered a judgment that reads in full: "Parties shall comply with the Memorandum Opinion and Order [50] issued by this Court on 10/22/14 along with this Court's Memorandum Opinion and Order dated 1/7/15 [61]" (brackets in original).

Although the magistrate judge appeared to contemplate injunctive relief, this document does not comply with Fed. R. Civ. P. 65(d)(1), which requires every injunction to "state its terms specifically" and to "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." After oral argument, at which members of this court pointed out the problem, the parties asked the magistrate judge to enter a self-contained

order detailing their obligations. The judge then entered this injunction:

> 1. Mr. Fryer is enjoined from and cannot state in his separate Report for himself and the California Department of Water Resources that his Report has been sponsored by any member of the Project Advisory Committee, which is composed of the Metropolitan Water District of Southern California; Irvine Ranch Water District; Inland Empire Utilities; San Antonio Water System; City of Boulder, Colorado; Sonoma County Water Agency; and Walton Family Foundation (through a grant to Alliance for Water Efficiency ("AWE")) to support or sponsor his Report except as provided below.

> 2. Mr. Fryer shall remove from his Report all references to: (1) AWE and its employees, including any reference in the Acknowledgment section of the Report; (2) Anil Bamezai, PhD ("Dr. Bamezai"); (3) all funding sources other than California Department of Water Resources ("DWR"), unless provided with permission from member [sic] of the Project Advisory Committee.

> 3. Mr. Fryer is enjoined from and cannot solicit any member of the Project Advisory Committee to sponsor or support his Report without the member's prior permission.

> 4. AWE shall promptly notify its funding sources and PAC members that a settlement has been reached in this case and that Mr. Fryer has the right to complete his Report on behalf of DWR.

> 5. As part of that notification, AWE shall provide Mr. Fryer's contact information (phone number and email address) and inform the recipient that if he/she/it is interested in discussing Mr. Fryer's Report or participating in its preparation, sponsorship or issuance they are free to contact Mr. Fryer.

> 6. Should any of those notified choose to participate in the preparation, funding or sponsorship of Mr. Fryer's Report, nothing in this injunction shall prevent Mr. Fryer from noting that sponsorship or participation in his Report.

7. AWE is enjoined from and cannot state in its separate Report that it was prepared on behalf of or sponsored by anyone other than AWE and the members of the Project Advisory Committee.

8. AWE is enjoined from and shall not contact DWR regarding sponsorship or participation in AWE's Report.

9. AWE shall not utilize, in whole or in part, the exact language used in Mr. Fryer's Report and shall utilize a different cover page, and different graphs and charts from those used in Mr. Fryer's Report.

10. Nothing in any provision of this injunction shall require either AWE's or Mr. Fryer's Report to arrive at any particular result, or use any particular mode of analysis or methodology.

Fryer contends that this injunction creates a prior restraint that violates the First Amendment. Before we tackle that subject, however, we must decide whether the suit is properly in federal court.

The Alliance's complaint invoked federal-question jurisdiction, 28 U.S.C. §1331, via the Copyright Act. The Alliance claimed to be a copyright proprietor that needed judicial assistance to prevent Fryer from infringing its rights. According to the Alliance, the report is a "work made for hire" within 17 U.S.C. §101, so that the Alliance owns the copyright even though Fryer wrote all the words. Yet to come within that definition the work must be either the output of an employee—and Fryer is not employed by the Alliance— or produced under "a written instrument signed by [the parties] that the work shall be considered a work made for hire". The Alliance did not allege that Fryer had agreed in writing that his report would be a work for hire. Fryer challenged the copyright claim in the district court, and the Alliance never alleged, let alone showed, that the statutory re-

quirements have been satisfied. Federal-question jurisdiction therefore is unavailable.

Diversity jurisdiction under 28 U.S.C. §1332 is the other possibility. The Alliance is incorporated and has its principal place of business in Illinois; Fryer is a citizen of California. The amount in controversy exceeds $75,000. But Fryer maintains that the Alliance is just a conduit for the donors that sponsored Fryer's report, and that none of the grants individually exceeds $75,000. Because separate persons' claims cannot be aggregated to reach the jurisdictional threshold, see *Snyder v. Harris*, 394 U.S. 332 (1969), Fryer contends that §1332 does not supply jurisdiction.

Yet the Alliance contends that it, rather than the funders, arranged with Fryer for the report. A corporation exists independently of its investors—and of its sponsors. Where the Alliance got the money to pay Fryer is neither here nor there for jurisdictional purposes. Nor does it matter whether the contract is oral rather than written. Fryer might have been able to argue that he does not owe any contractual obligation to the Alliance, as opposed to the sponsors, but that would have been a defense on the merits—and a claim's failure on the merits does not divest a district court of jurisdiction. See *Bell v. Hood*, 327 U.S. 678 (1946). Instead of defending, however, Fryer struck a bargain. Given diversity of citizenship and the amount in controversy, an action to enforce the settlement contract is independently within federal jurisdiction, even if the original suit would have failed on the merits or should have been dismissed. See *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375 (1994).

Now for the merits, and we can be brief. The district court's injunction has the classic attribute of a prior restraint:

It tells Fryer what he must or must not say in some future publication. Even an express promise not to speak, such as the one between secret agents and the CIA, normally is enforced by damages or restitution after the fact rather than a prior restraint. See *Snepp v. United States*, 444 U.S. 507 (1980). No one contends that national security or some other compelling interest is at stake here, and the district court did not give any reason for resorting to a prior restraint as opposed to, say, a declaratory judgment that might set up a claim for damages if the Alliance could show some concrete injury.

But courts should not decide constitutional issues unnecessarily, and we need not consider the effect of the First Amendment. The district court's injunction goes beyond what the parties agreed on March 13, 2014. It takes the Alliance's later drafts as if they were a signed contract, which they aren't. On March 13 Fryer promised to remove the Alliance's name from his report. He did not promise to omit the sponsors' names.

The Alliance contends, and the magistrate judge found, that unless Fryer is forbidden to mention any person or entity that participated in the Project Advisory Committee, some readers may associate Fryer's report with the Alliance even though the Alliance's name and logo don't appear. Granted. But that's the nature of a compromise. Neither side gets everything it wants. The Alliance did not get everything it wanted even in the injunction, ¶6 of which permits Fryer to name suppliers of data, advice, and financial support if they call him first.

The district court's injunction is vacated because it contains terms on which the parties have not agreed. If Fryer should violate any provision of the March 13 settlement, the

Alliance can pursue a remedy in damages—in federal court if the injury exceeds $75,000, and otherwise in state court. (The March 13 agreement specifies venue: the Alliance will sue Fryer only in California, and Fryer will sue the Alliance only in Illinois. This means that the Alliance cannot return to the Northern District of Illinois with any further contention that Fryer has failed to keep his promises.)

Some of the magistrate judge's language suggests that he wanted Fryer to turn additional data over to the Alliance or a consultant, but no such requirement appears in the injunction or in any judgment satisfying Fed. R. Civ. P. 58. Fryer is therefore under no obligations beyond those undertaken in the settlement agreement.

REVERSED