In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 17-1326

ALLIANCE FOR WATER EFFICIENCY,

*Plaintiff-Appellee,*

*v.*

JAMES FRYER,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 14 C 115 — **Jeffrey Cole**, *Magistrate Judge.*

---

ARGUED NOVEMBER 9, 2017 — DECIDED JUNE 5, 2018

---

Before RIPPLE, MANION, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* James Fryer and the Alliance for Water Efficiency set out to produce a study about drought. Unfortunately, the collaboration ran dry, and the Alliance sued Fryer under the Copyright Act, 17 U.S.C. §§ 101 *et seq.* The lawsuit proved to be far less troublesome than the ensuing settlement. While the parties were supposed to part ways and publish their own reports, they instead find themselves in the fourth year of protracted litigation.

The parties' disputes center on their obligations under the settlement. Years ago the district court ordered Fryer to turn over certain data sets to the Alliance and refrain from acknowledging a number of organizations in his study. On appeal we reversed solely on the acknowledgment issue. *Alliance for Water Efficiency v. Fryer*, 808 F.3d 1153 (7th Cir. 2015). Fryer then returned to the district court and sought restitution for injuries caused by the court's erroneous injunction. He also moved for attorney's fees under § 505 of the Copyright Act for having prevailed in the first appeal. A magistrate judge denied both motions and Fryer appealed.

We affirm. Fryer does not present genuine claims for restitution; he seeks to relitigate unrelated claims for breach of the settlement. His request for attorney's fees is also unsuccessful because he did not prevail on the Alliance's copyright claim as § 505 requires. The parties compromised their positions, obtained some relief, and walked away from the underlying lawsuit. At no time has any court entered judgment on the Alliance's copyright claim.

## I. Background

In 2011 James Fryer and the Alliance for Water Efficiency began to collaborate on a report about the economic effects of drought in the western United States. The Alliance agreed to corral funding and other organizations to support the project, and Fryer led the research team to produce the study. Both sides carried out their respective duties for a time. The Alliance amassed a number of funders and sponsors, and Fryer collected and analyzed reams of data from various public water utilities.

Regrettably, the partnership collapsed. In April 2013 Fryer circulated a draft of the report, but the Alliance expressed concern with the analysis and methodology. Months of negotiations ensued and the parties were still unable to resolve their differences. As a result, the Alliance sought to remove Fryer from the study and continue on without him. Fryer strongly objected. He claimed sole ownership of the report and refused to turn over his work product, including the underlying data he had collected.

The Alliance responded in federal court and sued Fryer under the Copyright Act, alleging it was the rightful owner of both the report and the utility data under the "work made for hire" doctrine. *See Billy–Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 591 (7th Cir. 2003). Fryer moved to dismiss, but the district court never had occasion to issue a ruling. The parties reached an oral settlement in a hearing before a magistrate judge on March 13, 2014. Now more than four years later and on their second appeal, the parties continue to litigate their obligations under the agreement.

The settlement's provisions are cobbled together from a hearing transcript. Three of them are relevant here. First, Fryer agreed to turn over his data sets from the public utilities in exchange for $25,000. If any utility had disclosed its data pursuant to a confidentiality agreement, the Alliance was required to secure a release before Fryer had to comply. Second, Fryer was allowed to publish his own report, but he could not acknowledge the Alliance's involvement. The Alliance was similarly permitted to issue its own study so long as it didn't mention Fryer or the California Department of Water Resources. Third, the parties agreed to enter a joint stipulation to dismiss the Alliance's suit with prejudice upon

"execution" of the settlement. But because the parties have litigated virtually nonstop ever since, they have not yet entered this stipulation. The district court where this suit was first filed has continued to exercise jurisdiction over the case.

Over the next several months, both sides thought the other was shirking its duties under the settlement. Fryer refused to turn over data he acquired from the City of Santa Rosa, California, because the Alliance hadn't yet secured the relevant release. The Alliance disagreed and demanded the data because the City had never negotiated a confidentiality agreement. Fryer also sought to acknowledge sponsors other than the Alliance in his report, but this time the Alliance refused to play ball. It had originally recruited these organizations and was worried their support could imply the Alliance's tacit approval of Fryer's project. Fryer found this concern to be beside the point. He had agreed to omit mention of the Alliance, not anyone else. Fryer further claimed he never would have agreed to a broad nondisclosure term. As a matter of academic integrity, he believed his report was unpublishable without recognizing these organizations.

The parties were unable to resolve these disputes and entered motions to enforce the settlement before the magistrate judge. The judge ruled in favor of the Alliance on both issues. He concluded that the Alliance was entitled to the Santa Rosa data and that Fryer was bound by the settlement to refrain from acknowledging the disputed organizations unless they contacted him first and asked to be recognized. The ruling was memorialized in an opinion on October 22, 2014, and final judgment was entered on January 7, 2015.

Fryer promptly appealed to this court. At oral argument we noted that the magistrate judge's January 2015 order did not satisfy the requirements for an injunction under Rule 65(d)(1) of the Federal Rules of Civil Procedure. Rather than "state its terms specifically" and "describe in reasonable detail … the acts restrained or required," FED. R. CIV. P. 65(d)(1), the order simply instructed the parties to comply with the October 2014 opinion. The parties accordingly returned to the magistrate judge to express our concern, and he entered a formal injunction. He ordered Fryer to refrain from acknowledging or even contacting the disputed organizations unless they reached out to him first. The judge then required the Alliance to pass along Fryer's contact information so the organizations could get in contact and assent to acknowledgement if they wished. Surprisingly, the injunction made no mention of the Santa Rosa data.

We therefore limited our review to the acknowledgement issue and reversed the magistrate judge in a December 2015 opinion. First, we concluded that the Alliance's underlying copyright claim did not confer federal-question jurisdiction because it was so poorly pleaded. The Alliance did not allege the necessary predicate of a work-made-for-hire claim: that the disputed work product was "either the output of an employee" or "produced under a written instrument … that [says] the work shall be considered a work made for hire." *Alliance for Water Efficiency*, 808 F.3d at 1156 (internal quotation marks omitted). Nonetheless, we concluded that subject-matter jurisdiction was secure under the diversity jurisdiction: diverse parties presented a contract dispute that exceeded the amount-in-controversy requirement. We then moved to the merits. In our view the March 2014 oral settlement was plain. Fryer had agreed to forgo acknowledging

the Alliance and no one else. He was free to mention any other funder or sponsor.

Fast forward to this appeal. Fryer was not content to win his case and publish his report as he desired. Rather he went back to the magistrate judge to request restitution for injuries allegedly caused by the erroneous injunction. He also sought attorney's fees under § 505 of the Copyright Act for having prevailed in the previous appeal. The judge was unpersuaded and denied Fryer's motions for restitution and attorney's fees. Fryer now appeals.

## II. Discussion

Our review is limited. We set aside a ruling on a motion for restitution only if the judge abused his discretion. *See Miles v. Indiana*, 387 F.3d 591, 598 (7th Cir. 2004). The same is true of a decision to deny attorney's fees. *See Budget Cinema, Inc. v. Watertower Assocs.*, 81 F.3d 729, 731 (7th Cir. 1996). "An abuse of discretion occurs if the district court reaches erroneous conclusions of law or premises its holding on a clearly erroneous assessment of the evidence." *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010) (internal quotation marks omitted).

## A. Restitution

District courts are overturned now and again. When that happens, the victorious appellant might seek to recover what he lost while living under an erroneous judgment. In some circumstances, federal law provides a restitutionary remedy. District courts can order restitution "so far as possible to correct what has been wrongfully done." *Baltimore & O.R. Co. v. United States*, 279 U.S. 781, 786 (1929). This is "one of the equitable powers[] inherent in every court of justice."

*Arkadelphia Milling Co. v. St. Louis Sw. Ry. Co.*, 249 U.S. 134, 145–46 (1919).

Restitution is a limited form of relief, though. The court simply returns to the appellant what the appellee gained by virtue of the now-vacated order. *See id.* at 145 ("[A] party against whom an erroneous judgment or decree has been carried into effect is entitled … to be restored by his adversary to that which he has lost thereby."); *Thomas v. UBS AG*, 706 F.3d 846, 853 (7th Cir. 2013) (noting restitution is appropriate when "the defendant has received something that of rights belongs to the plaintiff"). This is not an opportunity to relitigate grievances unrelated to what was incorrectly decided.

Yet that's exactly what Fryer endeavors to achieve here. He has gussied up unrelated contract disputes in a motion for restitution and thus seeks relief beyond what we have power to give. And even if we overlooked this fatal flaw, Fryer's claims are dubious and unsubstantiated. The magistrate judge did not abuse his discretion when he rejected these arguments and denied the motion for restitution.

Fryer's first argument relies heavily on the timeline of this litigation. He claims he was ready to publish his report sometime in 2014, but he was barred from doing so until we reversed the injunction in December 2015. This gave the Alliance over a year to publish its report without any competition, and it ultimately did so in late July 2015. Fryer now seeks over $105,000 in "restitution" for having lost the opportunity to publish his report first.

This is not a genuine claim for restitution. The magistrate judge did not prohibit Fryer from publishing his report; we

certainly never identified or addressed such an order on appeal. The injunction below merely instructed Fryer to forgo certain acknowledgments if he decided to issue his study. If Fryer lost anything, it was the right to publish a report with various acknowledgments for much of 2015.

That can't be the basis for restitution. Setting aside Fryer's failure to address this point, it's entirely speculative what the Alliance might have gained because of the injunction. *See TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 n.8 (7th Cir. 2007). A determination of that sort would require us to evaluate a counterfactual: a world in which Fryer published his report and the Alliance was conferred some comparative advantage by virtue of weakened competition. But all we have is the Alliance's publication and Fryer's silence. Perhaps the Alliance reaped an even greater benefit as a result, but we cannot redress Fryer's self-inflicted wound. *See Moran Foods, Inc. v. Mid-Atl. Mkt. Dev. Co., LLC*, 476 F.3d 436, 440 (7th Cir. 2007).

Fryer continues to resist the premise rather than dispute the conclusion. He argues that even if he was never barred from publishing his study, we should construe the injunction to be an equally weighty practical impediment to publication. We decline to do so. Fryer's primary "evidence" to support this contention is a series of citations to his own declaration in which he repeatedly affirms that undefined "principles" of academic scholarship did not allow him to publish a report without recognizing its funding and sponsorship. Whether or not this is correct, it doesn't make much of a difference. The injunction's scope was limited. It created a modest opt-in regime where the Alliance passed along Fryer's contact information and Fryer could acknowledge

any organization that asked to be mentioned. It is difficult to see this as an insuperable obstacle to publication, especially on Fryer's version of the facts. He claims the Alliance was the only party disappointed with his work product. If this were truly so, we imagine the remaining organizations would have contacted Fryer of their own accord and asked to be recognized in the study. That they declined to do so isn't attributable to the injunction.

Finally, even if we entertained Fryer's claim, he gives us no reasonable sense of what he's entitled to. His $105,000 figure misses the mark; it reflects allegedly unpaid work Fryer performed for the Alliance back in 2011. We fail to see the relevance of this to Fryer's restitution claim, and Fryer is noticeably silent on the matter. Ultimately this underscores what should now be clear: Fryer's request for restitution extends far beyond whatever gain the injunction conferred on the Alliance. He isn't really seeking restitution at all.

Fryer's remaining grounds for relief suffer from the same flaw. He next seeks roughly $26,000 because the injunction ordered him to turn over the Santa Rosa data. The judge concluded that the order was sound, but we needn't go that far. Our opinion in the first appeal never resolved the fight over the Santa Rosa data. In fact we had no authority to consider the question because "no such requirement appear[ed] in the injunction or in any judgment satisfying Fed. R. Civ. P. 58." *Alliance for Water Efficiency*, 808 F.3d at 1157. The upshot is that we never decided whether the judge's ruling on this data was "wrongfully done." *Baltimore & O.R. Co.*, 279 U.S. at 786. Fryer concedes as much in his opening brief. That admission is deadly: Restitution is not available for an order that was never disturbed on appeal.

Fryer's last complaint is that the Alliance unduly delayed in paying him once he finally handed over the Santa Rosa data. He seeks over $1,100 as "restitution" for interest he might have received absent the delay. This claim is even farther afield of what an appropriate restitution claim should look like. Fryer first presented the interest issue to the magistrate judge in his motion for restitution, meaning it arose only *after* our decision in the first appeal. It therefore could not have been the subject of a lower-court order we later reversed. Moreover, even if the magistrate judge had originally addressed the question, we did not. Our review was limited to the acknowledgment question, so the same must be true of claims for restitution. Fryer cannot revive a waived claim via a motion for restitution.

## B. Attorney's Fees

Federal courts have discretion to award attorney's fees to the prevailing party on a copyright claim. 17 U.S.C. § 505. Fryer believes he is entitled to fees from the first appeal because he prevailed against the Alliance. Specifically, he points to our conclusion that the copyright claim was so poorly pleaded that it did not confer federal-question jurisdiction. *See Alliance for Water Efficiency*, 808 F.3d at 1156. To Fryer's mind this implies we took his side and rejected the merits of the Alliance's underlying lawsuit.

Not so. It is axiomatic that a federal court must pin down subject-matter jurisdiction before proceeding to the merits. *See, e.g., Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). In the first appeal, we considered the copyright claim only in that context. Then once jurisdiction was satisfied, we turned to the only lower-court decision Fryer had appealed: an injunction enforcing a settlement. The parties' disagree-

ment was effectively a contract dispute, *see Air Line Stewards & Stewardesses Assoc., Local 550 v. Trans World Airlines, Inc.,* 713 F.2d 319, 321 (7th Cir. 1983), so we were limited to deciding the contract question. We did not and could not opine on the merits of a copyright claim that was never before us. The parties had settled that claim and thereby insulated it from our review.

No matter, Fryer claims. He assures us he prevailed in the settlement because he beat back the copyright claim and secured the right to publish his report. This argument also falls flat. A defendant does not prevail under § 505 just because the parties settle. That's nothing more than "a voluntary change" in the adversary's conduct. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 598, 600 (2001). What the law requires is a "*judicially sanctioned* change in the legal relationship of the parties." *Id.* at 605 (emphasis added). Whether on the merits, by consent decree, or on motion, a court must enter judgment on the copyright claim. *See Evans v. Jeff D.,* 475 U.S. 717, 720 (1986) (noting fees may be awarded "after a case has been settled by the entry of a consent decree"); *Riviera Distribs., Inc. v. Jones,* 517 F.3d 926, 928 (7th Cir. 2008) (holding that the copyright defendant prevailed because the court granted the plaintiff's motion for voluntary dismissal). That's what's missing here. All we have is a private settlement and a series of disputes about what it means. Much ink has been spilled over these contract claims, but no court has weighed in on anything else. We have not stamped our "judicial imprimatur" on the parties' reordered rights and responsibilities. *Buckhannon,* 532 U.S. at 605 (emphasis omitted).

### C.  Rule 38 Sanctions

We have one final matter to address. The Alliance moved for sanctions against Fryer under Rule 38 of the Federal Rules of Appellate Procedure. Sanctions are appropriate if an appeal is frivolous, meaning "the arguments made are merely cursory," *Duff v. Cent. Sleep Diagnostics, LLC*, 801 F.3d 833, 844 (7th Cir. 2015); "wholly undeveloped," *Smeigh v. Johns Manville, Inc.*, 643 F.3d 554, 566 (7th Cir. 2011); or "lacking in substance and foreordained to lose," *Berwick Grain Co. v. Ill. Dep't of Agric.*, 217 F.3d 502, 505 (7th Cir. 2000) (internal quotation marks omitted).

This does not strike us as such an appeal. The scope of restitution in this context is rarely litigated; this was not a case where the appellant ran bullheaded into battle, helplessly exposed to obvious slings. *See Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 938–39 (7th Cir. 1989) (en banc). In fact, the Alliance failed to recognize some of the critical arguments that ultimately decide this case. With attorney's fees, for example, the Alliance eschewed any discussion of judicial imprimatur and instead insisted that Fryer did not prevail because he secured precious little from the settlement. The Alliance also argued that the magistrate judge properly denied fees even if Fryer had prevailed. Both of these questions present much closer calls, especially since a prevailing party "is presumptively entitled to reimbursement of its attorneys' fees." *Riviera*, 517 F.3d at 928. In light of this, we cannot conclude that sanctions are appropriate.

AFFIRMED.